In re Bernard N. GIBSON, Sr., Debtor.

Bernard N. GIBSON, Sr., Plaintiff,

v.

Andrea Lynne GIBSON, nka Benson, Defendant.

Bankruptcy No. 3–92–03881.
Adv. No. 3–92–0350.

United States Bankruptcy Court,
S.D. Ohio, W.D.

June 11, 1993.

**368**

Dennis E. Stegner, Springfield, OH, for debtor.

Edward G. Bailey, Springfield, OH, for defendant.

DECISION ON ORDER GRANTING DEFENDANT'S MOTION TO RECONSIDER THE COURT'S DECISION OF APRIL 17, 1993

WILLIAM A. CLARK, Bankruptcy Judge.

Before the court is the defendant's motion for the court to reconsider its oral decision of March 17, 1993. The court has jurisdiction by virtue of 28 U.S.C. § 1334 and the standing order of reference in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I)—determinations as to the dischargeability of particular debts.

On April 17, 1993, this court issued an oral decision in which it found that $2002 of the obligation of plaintiff Bernard N. Gibson ("debtor") to defendant Andrea Lynne Gibson was nondischargeable as spousal support pursuant to 11 U.S.C. § 523(a)(5). After reviewing the defendant's "Motion to Reconsider Decision" and thoroughly reflecting upon the relevant case law, this court has concluded that it misapplied the case of *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983). Specifically, the court failed to fully appreciate the fact that the debtor's obligation, unlike the obligation in *Calhoun,* was not the result of loan assumptions nor is there a continuing duty of support. Here the debtor's obligation to the defendant for spousal support is composed of arrearages.

### FACTS

1) Plaintiff/debtor and defendant were married on January 31, 1984;

2) On September 14, 1990, the parties were granted a "Decree of Dissolution of Marriage" by the Common Pleas Court, Clark County, Ohio;

3) Incorporated into the Decree was a Separation Agreement previously executed by the parties. The Separation Agreement contained a variety of provisions dividing the ownership of automobiles, an automobile muffler business, and household goods. In addition, several hold-harmless provisions were included in the agreement;

4) With respect to support the Separation Agreement contained the following clause:

SPOUSAL SUPPORT

The husband and wife agree that the husband shall pay to the wife, as and for spousal support, the sum of $300.00 per week, plus poundage, for a total of $306.00 per week, said payments to be made through the Child Support Enforcement Agency of Clark County, Ohio, commencing with the execution of the within Separation Agreement and continuing on the same day of each and every subsequent week thereafter, until the earliest happening of one (1) of the following events, whereupon the husband's duty to pay spousal support shall absolutely cease and terminate:

A) the remarriage of the wife; or

B) the death of the husband; or

C) the death of the wife; or

D) the wife's cohabitation with an unrelated adult male person; or

E) until April 1, 1993.

The husband and wife further agree that this provision shall not be modified by any court in the State of Ohio or elsewhere. The husband and wife further agree that all of said spousal support payments paid by the husband to the

wife shall be deductible by the husband and income taxable to the wife.

5) The plaintiff remarried on July 18, 1992;

6) The amount of support due to the defendant from the debtor on July 18, 1992 was $15,600.

### CONCLUSIONS OF LAW

■ One of the major public policies underlying the Bankruptcy Code is to provide a debtor with a "fresh start" by discharging a debtor's previously incurred debts. Nevertheless, the fresh start policy is not paramount to all other public policies. "Congress has also determined that certain competing public policy interests shall take precedence [to the fresh start policy]. These competing concerns are reflected in the exceptions [to discharge] that Congress has enacted to the general rule that debts are dischargeable in bankruptcy." *Forsdick v. Turgeon*, 812 F.2d 801, 802 (2d Cir.1987). One such exception is § 523(a)(5) of the Bankruptcy Code which provides that a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt—

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>
> (A) ...;
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

"By virtue of § 523(a)(5), Congress has chosen between two competing interests— those of bankrupts and those of their former spouses and offspring—and it chose in favor of the latter." *Forsdick, supra,* 812 F.2d at 802.

When confronted with the question of whether a debt is in the nature of alimony, maintenance, or support, a majority of the courts of appeals has found that an intensive analysis of the obligation is not required:

> We agree with the majority view, and hold that the inquiry of the bankruptcy court should be limited to the nature of the obligation at the time it was under taken. *Gianakas v. Gianakas (In re Gianakas),* 917 F.2d 759, 763 (3rd Cir. 1990).

The language used by Congress in § 523(a)(5) requires bankruptcy courts to determine nothing more than whether the support label accurately reflects that the obligation at issue is "actually in the nature of alimony, maintenance, or support." The statutory language suggests a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the *nature* of support. The language does not suggest a precise inquiry into financial circumstances to determine precise levels of need or support; nor does the statutory language contemplate an ongoing assessment of need as circumstances change. *Harrell v. Sharp (In re Harrell),* 754 F.2d 902, 906 (11th Cir.1985). *Accord, Sylvester v. Sylvester,* 865 F.2d 1164, 1166 (10th Cir.1989); *Forsdick v. Turgeon,* 812 F.2d 801, 804 (2d Cir.1987); *Draper v. Draper,* 790 F.2d 52, 54 (8th Cir.1986).

In the instant case, the debtor asserts that because of his former spouse's post-dissolution earnings, she did not require the full $300 per week for support. In addition, the debtor maintains that his financial condition prevented him from paying the support obligation and that to require him to pay this obligation now would interfere with his fresh start in bankruptcy. In support of his position, the debtor cites a case of this court's court of appeals: *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103 (6th Cir.1983). The precise issue before that court was the dischargeability of a continuing obligation to hold a former spouse harmless on past marital debts. *Id.*

at 1109 n. 9. To resolve this issue the court formulated a four-pronged test:

1) Whether the state court or the parties to the divorce *intended* to create an obligation to provide support through the assumption of the joint debts;

2) whether such assumption has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied;

3) whether the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support; and

4) if the amount of support is manifestly unreasonable, how much of such amount may be fairly considered "in the nature of" support for purposes of federal bankruptcy law. *Id.*, at 1109–1110.

 The initial question before this court is whether *Calhoun* and its extensive four-pronged test is applicable to a case involving spousal support arrearages. A close examination of the *Calhoun* decision convinces the court that the *Calhoun* decision is of narrow scope and is not controlling in this adversary proceeding.[1]

As mentioned, the *Calhoun* court was confronted with the sole issue of dischargeability of a *continuing* obligation to *hold harmless* a former spouse on past marital debts. Under § 523(a)(5), obligations for support, maintenance, and alimony are not dischargeable, while debts representing property settlements are treated as "ordinary" debts and are dischargeable. Hold-harmless provisions and the assumption of marital debts present special problems for the courts because their "true" nature or function is not immediately discernible, i.e., their nature may be support, a property settlement, or a combination of both. As a

result, it is not possible nor desirable to simply declare that such obligations are always support, maintenance, or alimony, or always property settlements. Instead, these obligations must be carefully examined to reveal whether they are actually in the nature of support, maintenance, alimony, or a property settlement. As a prelude to the development of its four-pronged test, the Sixth Circuit recognized the peculiar nature inherent in the assumption of debt and explained why such obligations are deserving of heightened judicial scrutiny:

> The initial difficulty is that every assumption of a joint loan obligation in a divorce settlement at least indirectly contributes to support. The former spouse is relieved of payments on that debt and thus has funds for other purposes including necessary support. Support in this broad sense results even if the assumption of joint marital debts is actually a division of property. It is clear from the statute and legislative history that Congress could not have intended that all assumptions of joint debts would be nondischargeable. Such assumptions of debt are discharged "to the extent that payment ... is not actually in the nature of alimony, maintenance or support...." 124 Cong.Rec. 4, 11,096 (daily ed. Sept. 28, 1978) (Rep. Edwards) 517, 412 (daily ed. Oct. 6, 1978) (Sen. DeConcini). To interpret § 523 in this broad sense envisages results at odds with the "fresh start" concept which underlies the Bankruptcy Act. (citations omitted) The federal bankruptcy common law of domestic relations which Congress has apparently charged the bankruptcy courts to fashion must give considerable weight to this important factor. This, and Congress' mandate that federal bankruptcy law considerations must be determinative in dischargeability issues, convinces us that

---

1. *Calhoun's* has been frequently criticized for considering "present needs" and "change of circumstances" and categorized as the minority rule. *See, e.g., Sylvester v. Sylvester,* 865 F.2d 1164 (10th Cir.1989); *Forsdick v. Turgeon,* 812 F.2d 801 (2d Cir.1987). After a review of the relevant case law, this court believes that *Calhoun* is not totally inconsistent with the majority rule. Rather, in this court's view, *Calhoun*

(although preceding the cases establishing the majority rule) represents an exception to the majority rule in § 523(a)(5) determinations when they involve hold-harmless agreements or debt assumption of marital debts. Only in these cases does this court believe *Calhoun* requires an examination of "present needs" and "change of circumstances" by using its four-pronged test.

a more searching inquiry is required than merely applying traditional factors borrowed from state law. *Id.,* at 1108–1109.

As a result, this court is convinced that the *Calhoun* court was primarily concerned with the difficulties of classifying debt assumptions as support, maintenance, alimony, or property settlements, and the four-pronged test was developed in response to this problem. Further indication of the *Calhoun* court's intent to limit the applicability of its test to hold-harmless provisions and loan assumption questions is found in the precise language of the decision. In setting out the four prongs of the test, the court repeatedly uses the word "assumption" as the obligation under review. In addition, and of particular import to the instant proceeding, the court made it quite clear that it was not ruling on the dischargeability of *arrearages* of such obligations:

> At issue in the present case is solely the dischargeability of a continuing obligation to hold the former spouse harmless on past marital debts. There has been no claim made that Calhoun is in arrears on past payments due under this obligation. The dischargeability of such unpaid past liabilities requires an analysis distinct from consideration of whether the continuing obligation to hold harmless may be discharged. *Id.* at 1109 n. 9.

■ With respect to this footnote, this court agrees with the court in *McArtor v. Rowles (Matter of Rowles)*, 66 B.R. 628, 631 (Bankr.N.D.Ohio 1986):

> We presume that Footnote 9 was included for the purpose of exempting from the *Calhoun* analysis, and especially from the "present needs test," cases which involve past-due obligations which

are clearly in the nature of support. If such an exemption had not been provided, a debtor could theoretically control the character of debts owed to a former spouse simply by not paying amounts clearly due for support so that the spouse is forced to be self-supporting and then claiming, after the bankruptcy petition is filed, that the debts are a dischargeable property settlement simply because the former spouse is now self-supporting. Clearly, it was not the intent of Congress to subject to scrutiny obligations which are very clearly in the nature of support or maintenance, nor do we think the Sixth Circuit intended such a result in its drafting of the *Calhoun* decision. Footnote 9 is a clear indication of this.[2,3]

■ Even if the *Calhoun* test is viewed as applicable to debts other than assumption of loans cases, the decision also makes it clear that, in addition to footnote 9's exemption for arrearages, a change in the debtor's circumstances does not affect his obligations for arrearages owed a former spouse:

> If the circumstances of the debtor have changed from the time the obligation to the former spouse to pay joint debts was created so as to make such support now inequitable the bankruptcy court may consider the debtor's *current* general ability to pay insofar as it relates to the *continuing* obligation to assume the joint debt. *Id.,* n. 11 (emphasis in original).

"In light of Footnote 11, it is clear that *Calhoun* intended that the debtor's current financial status should only be considered in regard to the continuing portion of a support obligation and not to any arrearage." *Brown v. Moss (In re Brown)*, 145 B.R. 239, 243 (Bankr.N.D.Ohio 1992).

---

**2.** By virtue of footnote 9, "the *Calhoun* test is appropriate only for ongoing support obligations, not past child support arrearages." *Troxell v. Troxell (In re Troxell)*, 67 B.R. 328, 331 n. 3 (Bankr.S.D.Ohio 1986).

**3.** "The inclusion of this footnote has caused confusion as to the general applicability of the *Calhoun* test to all cases arising under § 523(a)(5)." *Patterson v. Maytac (In re May-*

*tac)*, 102 B.R. 125, 127 (Bankr.S.D.Ohio 1989). Consequently, *Maytac* and other decisions in the lower courts of the Sixth Circuit have held "that *Calhoun* has general applicability to all cases arising under § 523(a)(5)." *Swiczkowski v. Neagley (In re Swiczkowski)*, 84 B.R. 487, 491 (Bankr.N.D.Ohio 1988). *See also Wilburn v. Wilburn (In re Wilburn)*, 125 B.R. 759 (Bankr. E.D.Tenn.1991).

Finally, a subsequent decision of the Sixth Circuit convinces this court that the Sixth Circuit has not yet determined that the *Calhoun* test should be utilized in all § 523(a)(5) determinations. In *Singer v. Singer (In re Singer)*, 787 F.2d 1033 (6th Cir.1986), the Sixth Circuit was required to determine whether certain periodic payments arising from a separation agreement were nondischargeable as alimony, maintenance or support, or dischargeable as a property settlement. In reaching its conclusion, the panel did not utilize the *Calhoun* test in determining whether the debtor's obligation was dischargeable under § 523(a)(5). Instead, the court stated that:

> *Shaver v. Shaver,* 736 F.2d 1314 (9th Cir.1984) lends support to the bankruptcy court's finding of nondischargeability. *Shaver* notes that if a settlement agreement fails to provide explicitly for spousal support, the court may presume that a so-called property settlement is intended for support, when circumstances indicate that the recipient spouse needs support. *Shaver* mentioned such circumstances as the presence of minor children, imbalance in the relative incomes of the parties, the nature and duration of the obligation, as factors which may be considered by the bankruptcy judge in determining whether a certain settlement, regardless of how it is labelled, is for support. *Id,* 787 F.2d at 1035.

■■■ In contrast, one member of the panel in *Singer* wrote a separate concurring opinion for the reason that he found *Calhoun* to be dispositive of the issue in *Singer.*[4] Arguably, the remainder of the panel did not find *Calhoun* to be dispositive because they did not believe *Calhoun* applicable to non-assumption cases. Regardless of the correctness of such an inference, what is clear is that, as of this writing, the Sixth Circuit has not directed this circuit's lower courts to apply *Calhoun* to non-assumption of debt cases. As a result, this court—with the exception of hold-harmless and assumption of debt cases—will decline to make extensive intrusions into the area of domestic relations absent a clearer congressional mandate to do so (or a clear indication from this court's court of appeals). At this time, this court finds no such mandate:

> State-crafted family law mechanisms should not be disturbed by federal court intervention unless there is an unmistakable mandate from congress to do so in order to achieve a valid federal objective.

We find no such mandate here. To the contrary, congress has clearly required the bankruptcy court to protect the rights of a former spouse receiving alimony at the expense of a debtor seeking a fresh start.

....

Had Congress wished the bankruptcy court to consider the current impact of its decision on the parties in determining whether an alimony debt is dischargeable it could easily have so provided. Indeed, for educational loan obligations Congress did exactly that in § 523(a)(8) which treats student loans as nondischargeable *unless* "excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents. *Forsdick, supra,* 812 F.2d at 804.

■■■ Instead, in § 523(a)(5) dischargeability cases—other than those involving hold-harmless provisions, assumptions of loans, or other hybrid provisions—this court will not utilize the "more searching inquiry" of the *Calhoun* test, but will follow the approach of the majority of the

---

**4.** "It seems clear that the *[Calhoun]* analysis is applicable to more than simply assumption-of-debt cases." *In re Singer, supra,* 787 F.2d at 1038 n. 2 (Guy, J., concurring).

This footnote in *Singer's* concurring opinion has been cited as authority for the conclusion that "[a]lthough *Calhoun* involved a debt-assumption provision in a separation agreement, the language of the court's opinion has general applicability in all cases brought under § 523(a)." *Shelton v. Shelton (In re Shelton),* 92 B.R. 268, 272 (Bankr.S.D.Ohio 1988). As discussed, this court believes the *Calhoun* court went to great lengths to at least reserve the question of general applicability of its test. In addition, it must be pointed that a concurring opinion is a view personal to the concurring judge and not the opinion of the court. Therefore, this court does not find Judge Guy's concurring opinion to be dispositive of the issue.

courts of appeals.[5] In doing so, this court believes that the first prong of the *Calhoun* test is consistent with the majority approach:

[T]he initial inquiry must be to ascertain whether the state court or the parties to the divorce *intended* to create an obligation to provide support.... In making this determination the bankruptcy court may consider any relevant evidence including those factors utilized by state courts to make a factual determination of intent to create support. *In re Calhoun, supra*, 715 F.2d at 1109.

Some of the factors that may be examined by the court are:

[T]he nature of the obligations (provision for daily necessities indicates support); the structure and language of the parties' agreement or the court's decree; whether other lump sum or periodic payments were also provided; length of the marriage; the existence of children from the marriage; relative earning powers of the parties; age, health and work skills of the parties; the adequacy of support absent debt assumption; and evidence of negotiation or other understandings as to the intended purpose of the [payments]. *Id.*, at 1108 n. 7.

In the instant case, both parties were represented by counsel in negotiating their separation agreement. The internal structure of the separation agreement demonstrates a comprehensive settlement of the parties' rights and obligations, and indicates that the parties intended the debtor to pay the defendant $300 as support or maintenance. Evidence introduced at the trial demonstrated that the defendant knew how much money she required as living expenses and that this is the amount she successfully negotiated with the debtor. Testimony at the trial in this matter also convinces the court that the $300 per week was to provide the defendant with suffi-cient security to remain in the financially uncertain real estate business and to become financially self-supporting by April 1, 1993. The evidence also established that the parties fully anticipated the defendant would earn income during the support period.[6] In short, the evidence establishes that the parties intended for the defendant to be provided spousal support or maintenance by the debtor until April 1, 1993, or until one of the contingencies embodied in the separation agreement occurred. The court, therefore, finds that the debtor's obligation of $15,600 to defendant represents spousal support or maintenance, is for arrearages only, and is, therefore, nondischargeable under § 523(a)(5) of the Bankruptcy Code.

For the foregoing reasons judgment will be entered in favor of the defendant, and the previous judgment entry will be amended to reflect the court's decision.

## JUDGMENT

In accordance with the court's decision of this same date, it is hereby ORDERED, ADJUDGED and DECREED that the court's judgment of April 6, 1993, is amended, and Defendant Andrea Lynne Gibson (nka Benson) is awarded judgment of an additional $13,598.00 so that the total judgment against Plaintiff Bernard N. Gibson, Sr., is $15,600.00, which amount is determined to be nondischargeable under 11 U.S.C. § 523(a)(5).

---

**5.** Nevertheless, the precise holding in the instant case is narrow and is that any support or maintenance owed by the debtor to the defendant will be nondischargeable because it is composed of *arrearages* only and is not a continuing obligation of the debtor.

**6.** It was not the intent of the parties, as erroneously assumed by the court in its previous oral decision, that the defendant should net $300 a week from a combination of support payments and her own income.