In re David ROBB, Sr., Debtor.

Linda ROBB–FULTON,
Plaintiff–Appellee,

v.

David ROBB, Sr., Defendant–Appellant.

No. 93–2024.

United States Court of Appeals,
Fourth Circuit.

Argued April 13, 1994.

Decided May 6, 1994.

**ARGUED:** Joel D. Seledee, Weinstock, Stevan, Harris & Friedman, P.A., Baltimore, MD, for appellant.

Anthony A. Keder, Law Office of Saul J. McGrane, Hyattsville, MD, for appellee.

**ON BRIEF:** Melvyn J. Weinstock, Weinstock, Stevan, Harris & Friedman, P.A., Baltimore, MD, for appellant.

Before RUSSELL, WILKINSON, and HAMILTON, Circuit Judges.

Affirmed by published opinion. Judge HAMILTON wrote the opinion, in which Judge DONALD RUSSELL and Judge WILKINSON joined.

## OPINION

HAMILTON, Circuit Judge:

In this appeal, we must decide whether David Robb, Sr. (the Debtor) may discharge his obligation for $3,000 monthly payments ($3,000 Monthly Payments) to his ex-wife, Linda Robb–Fulton (Linda or the ex-wife), which arose as part of a voluntarily executed marital settlement. The bankruptcy court found that the Debtor and his ex-wife intended these monthly payments as support for his ex-wife's daughter by another marriage (Dianna) and, therefore, the payments were dischargeable in bankruptcy. 11 U.S.C. § 727. On appeal, the district court reversed the bankruptcy court, holding that this obligation was alimony and, therefore, excepted from discharge. 168 B.R. 575. 11 U.S.C. § 523(a)(5). For the reasons stated herein, we affirm the decision of the district court.

I

The Debtor and Linda married on November 10, 1974. At that time, Linda had two children by another marriage, a son David and a daughter Dianna. Prior to this marriage, Dianna suffered severe brain damage during dental surgery and required constant care thereafter. As a result of a recovery

from a medical malpractice lawsuit involving Dianna, Linda established a $150,000 trust fund for Dianna's benefit. The Debtor and Linda had no children by their marriage and the Debtor never adopted David or Dianna.

During their marriage, the Debtor was a physician earning between $100,000 and $125,000 annually. Although Linda had only a high school degree, after they married the Debtor financed her efforts to continue her education, resulting in her obtaining a college degree. Consequently, Linda became an emergency room physician's assistant during her marriage to the Debtor.

As a result of marital difficulties, the parties separated in 1980. On November 18, 1980, the Debtor and Linda executed a Separation Agreement (the 1980 Agreement). Among other things, the 1980 Agreement required the Debtor to pay a prescribed amount of alimony for 121 months, commencing in August 1980 and ending after the last payment on September 1, 1990. The payment amounts were as follows:

August 1980 to December 1980—$3,000 per month

January 1981 to June 1981—$3,150 per month

July 1981 to December 1981—$3,300 per month

January 1982 to September 1990—$700 per month

The 1980 Agreement allowed for subsequent adjustments to the alimony payments, depending on inflation.

The 1980 Agreement also required the Debtor to provide medical insurance for Linda and her two children for ten years and to pay Linda's medical expenses to the extent they were not covered by her insurance. Notably, the 1980 Agreement did not require the Debtor to cover the uninsured medical expenses for Linda's children. Finally, the 1980 Agreement divided certain personal property and required the Debtor to convey the marital home to Linda, with Linda assuming the existing mortgage obligation. When the Debtor conveyed the home, there was approximately $50,000 equity in the home.

The parties attempted to reconcile in November 1981, resuming cohabitation and participating in marital counseling. Unfortunately, this reconciliation did not last and the parties separated again in 1983. When the parties separated for the second time, the Debtor was earning in excess of $100,000 annually compared to Linda's annual salary of approximately $20,000. On August 24, 1983, the parties entered into an agreement entitled "Addendum to Separation and Property Settlement Agreement" (Addendum). The parties agreed that, except as modified or amended by the Addendum, the obligations contained in the 1980 Agreement would continue as valid and binding. The Addendum was incorporated but not merged into the Final Judgment of Absolute Divorce.

In a section captioned "Alimony," the Addendum provided, in part, that the Debtor "does hereby agree to pay alimony (temporary and permanent) for support and maintenance of the Wife until such time as the Wife should die, or until the [Debtor] dies, in accordance with the payment terms specified herein.... Said alimony shall be paid ... in the amount of three thousand dollars ($3,000) per month." (J.A. 20). This provision in the Addendum thereby replaced the alimony payment schedule contained in the 1980 Agreement with the $3,000 Monthly Payments. In a separate section captioned "Temporary Support," the Addendum also required the Debtor to "pay temporary support for David Maphis until he has completed boarding school ... or until he discontinues said schooling" and to pay $5,200 "in consideration of [Linda's] miscellaneous expenses incurred on behalf of her son, David Maphis." (J.A. 21). In return, the Addendum allowed the Debtor to claim David as a dependent on his Federal and State income tax returns. In another section captioned "Housekeeping Expenses," the Addendum required the Debtor to pay for the housekeeper currently working for Linda, who assisted in caring for Dianna. If the housekeeper chose to leave, this section required the Debtor to pay Linda an additional $400 per month as "temporary support until such time as Dianna Maphis is in a residential situation elsewhere." (J.A. 21). In a section captioned "Medical and Hospital Expenses and Insurance," the Ad-

dendum provided that the Debtor would not be liable for Linda's medical expenses or insurance after their divorce, but required the Debtor to pay for "continu[ing] ... [the] insurance policies ... cover[ing] David Maphis until such time as he becomes ineligible under said policies and cover[ing] Dian[n]a Maphis until such time as the [Debtor] and [Linda] agree that such coverage is unnecessary." (J.A. 23). Finally, the Addendum required the Debtor to convey his interest in a 1982 Datsun automobile to Linda, and to continue making the payments on this car.

The Debtor made the required $3,000 Monthly Payments for approximately three years. During this time, the Debtor deducted these payments as alimony on his income tax returns and Linda reported these payments as income on her tax returns. After experiencing severe financial problems, the Debtor informed Linda that he could no longer afford the $3,000 Monthly Payments and subsequently ceased making these payments. On March 15, 1991, the Debtor filed his petition for bankruptcy, which was subsequently converted into a Chapter 7 petition. On February, 13, 1992 Linda filed a complaint objecting to the dischargeability of the $3,000 Monthly Payments. In that complaint, Linda asserted that these payments were alimony for her benefit and, therefore, excepted from discharge.

During the hearings before the bankruptcy court, the Debtor testified that he intended the $3,000 Monthly Payments as support for Dianna rather than as alimony for his ex-wife. The Debtor stated that he arrived at the $3,000 per month figure by taking the cost of placing Dianna in an institution (estimated by him at $2,500 per month) and taking into account the tax effects of the payments as income to his ex-wife and a deduction for himself. In response, Linda testified that she needed support at the time of the separation and was aware of the disparity in her income and the income of the Debtor. She further testified that she did not discover the Debtor purportedly intended the payments to support Dianna until the bankruptcy proceedings.

On January 3, 1993, the bankruptcy court entered an order finding the $3,000 Monthly Payments dischargeable because the parties intended them to support Dianna, the Debtor's non-adopted stepchild, rather than as alimony for his ex-wife. Linda appealed to the district court. On July 8, 1993, the district court entered its order, reversing the bankruptcy court and holding that these payments were excepted from discharge pursuant to 11 U.S.C. § 523(a)(5). The district court reasoned that the bankruptcy court's finding as to the parties' intent was clearly erroneous because the objective indicia of intent "establishes beyond a reasonable doubt that the payments were in fact alimony." (J.A. 178).

The Debtor appeals.

## II

To effectuate the Bankruptcy Code's "fresh start" policy, Chapter 7 of the Code entitles a debtor to discharge "all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b). However, the Code excepts from discharge any debts to a "former spouse or child of the debtor ... for alimony to, maintenance for, or support of such spouse or child ... [provided that] such liability is actually in the nature of alimony, maintenance or support." 11 U.S.C. § 523(a)(5)(B). This provision in the Bankruptcy Code "departs from the general policy of absolution or fresh start in order to 'enforce an overriding public policy favoring the enforcement of familial obligations.'" *In re Sampson*, 997 F.2d 717, 721 (10th Cir.1993), citing *Shaver v. Shaver*, 736 F.2d 1314, 1315–16 (9th Cir.1984).

In the context of a voluntarily executed marital settlement, determining whether the payments are "actually in the nature of alimony, maintenance or support" and, therefore, excepted from discharge, focuses on whether the parties intended the debtor's obligation to support his ex-spouse or children. *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir.1986). In undertaking this analysis, a court must examine the *mutual* intent of both parties *when* the parties executed the agreement. *Id.* at 1078; *Matter of Davidson*, 947 F.2d 1294, 1296–97 (5th Cir.1991). Because the Code favors dischargeability, the

spouse advocating an exception from discharge has the burden of establishing the requisite intent. *Tilley*, 789 F.2d at 1077.

Applied to the present case, if the parties intended the $3,000 Monthly Payments required by the Addendum to support the ex-wife Linda, then this obligation qualifies as alimony and is excepted from discharge. However, if the parties intended the payments to support Dianna, such obligation is dischargeable because Dianna is *not* a "child of the debtor." 11 U.S.C. § 523(a)(5). Like the district court, we review the bankruptcy court's finding on the parties' mutual intent under the clearly erroneous standard. *Tilley*, 789 F.2d at 1078.[1]

On appeal, the Debtor contends that the bankruptcy court did not clearly err in finding that the parties intended the $3,000 Monthly Payments as support for Dianna. To substantiate this contention, the Debtor points to several factors which he contends suggest that the parties mutually intended the payments to support Dianna. According to the Debtor, these facts imply that, when the parties executed the Addendum which imposed the $3,000 Monthly Payments, Linda had no need for any support from the Debtor. For example, when the parties executed the Addendum in 1983, Linda had annual earnings of $20,000, was in good health, and was twenty years younger than the Debtor. Moreover, the Debtor conveyed both his house and a car to Linda. Because Linda needed no support when the Addendum was executed, the Debtor contends that the parties must have intended the $3,000 Monthly Payments to support Dianna rather than Linda.

Further, the Debtor asserts that the Addendum increased and extended the required payments to Linda from the 1980 Agreement payment schedule without any evidence of her need for additional funds during the intervening time. In the Debtor's opinion, this fact reinforces the inference that the parties mutually intended the $3,000 Monthly Payments to support Dianna. Because the facts

create a reasonable inference that the parties mutually intended the $3,000 Monthly Payments to support Dianna rather than Linda, the Debtor asserts that the bankruptcy court did not clearly err in finding such intent. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 ("Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous."). Thus, the Debtor concludes that his liability for these payments should not be excepted from discharge under 11 U.S.C. § 523(a)(5). We disagree.

The record reveals that the Debtor classified the $3,000 Monthly Payments to his ex-wife as alimony on his income tax returns, thereby deducting these payments from his taxable income. Faced with similar facts, several courts have held that the doctrine of quasi-estoppel precludes debtors from subsequently claiming in bankruptcy proceedings that these payments were something other than alimony. *Matter of Davidson*, 947 F.2d at 1297; *In re Cunningham*, 141 B.R. 671, 674 (Bankr.W.D.Mi.1992); *In re Robinson*, 122 B.R. 502, 506 (Bankr.W.D.Tx.1990). These courts reason that "quasi-estoppel forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects." *Matter of Davidson*, 947 F.2d at 1297.[2]

We find this reasoning persuasive. In the present case, the Debtor "has accepted the benefits of his agreement [by] tak[ing] tax deductions for the payments to [his ex-wife]." *Id.* As the Fifth Circuit opined:

> To allow a spouse to set up an intricate and unambiguous divorce settlement, carefully distinguishing certain periodic payments, called alimony, from the division of marital property, and consistently taking advantage of this characterization for tax purposes, only then to declare that the payments truly represented a division of

---

1. Because the district court acted as an appellate court in this matter, we review the district court's decision *de novo*.

2. Unlike our limited review of the bankruptcy court's factual findings, we must determine *de novo* whether quasi-estoppel applies. *Matter of Davidson*, 947 F.2d at 1296.

property, would be a legal affront to both the bankruptcy and tax codes. *Id.* Because the Debtor classified the $3,000 Monthly Payments as alimony for tax purposes, we hold that quasi-estoppel precludes him from avoiding the corresponding obligations or effects of this classification under the Bankruptcy Code.

### III

In reaching this conclusion, we note that the Tenth Circuit, in dicta, declined to adopt a *per se* application of quasi-estoppel. *In re Sampson,* 997 F.2d at 724–25 n. 6. There, the Tenth Circuit opined that the Bankruptcy Code might require a court to sanction a debtor's inconsistent treatment of payments to his ex-spouse for tax and bankruptcy purposes. The court reasoned that, in determining the deductibility of payments to an ex-spouse, the Internal Revenue Code only examines how the parties labelled the obligation. In contrast, "Section 523(a)(5) [of the Bankruptcy Code] requires federal courts to look beyond labels [to the true intent of the parties]." *Id.* However, the Tenth Circuit recognized that a debtor's tax treatment of his obligations to his ex-spouse was probative of the parties' mutual intent. *Id.* at 724.

In the present case, the Debtor urges us to follow *Sampson* and refuse to apply the quasi-estoppel doctrine. We decline to do so. However, even if we were to accept the Debtor's argument, which we do not, we would still hold that the bankruptcy court clearly erred in finding that the parties mutually intended the $3,000 Monthly Payments to support Dianna. As the district court noted, the objective indicia of the parties' mutual intent establish beyond a reasonable doubt that the parties intended these payments as alimony for Linda.

For example, the $3,000 Monthly Payments were not related to the needs of Dianna and continued in full regardless of Dianna's needs or even her death. Instead, the payment ceased only upon Linda's death, regardless of whether Dianna predeceased her mother or had financial needs after her mother's death. Also, the Addendum contained separate provisions for the support of Linda's children. Specifically, in separate provisions the Addendum indicated that the Debtor would pay for his stepson's schooling and a housekeeper to assist in caring for Dianna. Further, the Addendum expressly labeled the $3,000 Monthly Payments as "alimony" and indicated that they were "for [the] support and maintenance of [the] Wife." (J.A. 20). In addition, the Debtor's, as well as Linda's, tax treatment of this obligation suggests that the parties considered the payments as alimony. *Sampson* 997 F.2d at 724; *Tilley,* 789 F.2d at 1078 n. 3.

Because the Debtor classified the $3,000 Monthly Payments to Linda as alimony on his income tax returns and those payments bore no relation to the specific needs of Dianna and could terminate even though Dianna might have continuing needs, the facts clearly establish that the parties mutually intended the $3,000 Monthly Payments to qualify as alimony. Accordingly, even without the benefit of quasi-estoppel we conclude that these payments are excepted from discharge pursuant to 11 U.S.C. § 523(a)(5).

### IV

For the reasons stated herein, we affirm the decision by the district court.

*AFFIRMED.*