**In re Allen Charles EDWARDS, Debtor.**

**Teri L. HENRY, Plaintiff,**

**v.**

**Allen Charles EDWARDS, Defendant.**

**Bankruptcy No. 96–35102.**
**Adversary No. 97–3004.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Dec. 23, 1997.

Ira Rubin, Goldman, Rubin & Shapiro, Dayton, OH, for Plaintiff.

John Paul Rieser, Rieser & Marx, Dayton, OH, for Defendant/Debtor.

DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR ABSTENTION

WILLIAM A. CLARK, Chief Judge.

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the standing order of reference entered in this district. Determinations of dischargeability are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Objections to discharge are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(J). This Decision and Order constitutes the court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052(c).

This matter is before the court on the Plaintiff's Motion for Partial Summary Judgment [Adv. Doc. # 11–1] and Exhibits in Support; the Defendant's Motion for Abstention and Memorandum Contra [Adv. Doc. # 13–1] and Exhibits in Support [Adv. Doc. # 14–1]; and the Plaintiff's Reply Memorandum [Doc. # 16–1].

## FINDINGS OF FACT

On October 31, 1989, Allen Charles Edwards, the Defendant in this adversary proceeding and the Debtor in the bankruptcy case at bar ("Defendant/Debtor"), and Terri L. Henry, the Plaintiff in this adversary proceeding ("Plaintiff"), entered into a separation agreement (the "Separation Agreement"). At that time, the parties had been married for over 22 years, and both children of the marriage had reached the age of majority. While the Plaintiff was represented by an attorney in the drafting of the Separation Agreement, the Defendant/Debtor was not.

As is customary with separation agreements, the agreement in question was reviewed by the Domestic Relations Court's Chief Referee prior to being set for hearing. In November of 1989, the Referee wrote Plaintiff's attorney a letter expressing concern as to the restriction on modification contained in the Agreement's alimony provisions. See Edwards v. Edwards, Case No. C.A. 14022, 1994 WL 95253, at *3 (Ohio App. Mar. 23, 1994).

On December 13, 1989, the Domestic Relations Court of Montgomery County, Ohio granted to the parties a Decree of Dissolution of Marriage, incorporating within the Decree the October 31, 1989 Separation Agreement and an Amendment to Separation Agreement entered into on December 13, 1989. The evidence indicates that the Referee's letter was never shown to the trial judge. Id.

In terms of alimony, the October 31, 1989 Separation Agreement, as amended and incorporated into the Decree, provides as follows:

*ARTICLE 5. ALIMONY*

The Husband shall pay to the Wife as and for permanent alimony the sum of $500.00 per week. Said alimony payments are to be made through the Montgomery County Support Enforcement Agency, 14 W. Fourth Street, Dayton, Ohio 45422 and shall be paid by cash, certified check or money order, plus the two percent (2%) service fee of the Support Enforcement Agency.

The alimony shall be paid on a weekly basis . . ., and shall continue until the happening of whichever of the following events shall first occur: death of Wife or death of Husband. Alimony shall not terminate in the event of remarriage of the Wife or in the event of Wife's cohabitation on a regular basis with a male individual not related to her. The amount of alimony payable in accordance with this paragraph shall not be modifiable (except for cost of living increases), or revocable by either of the parties or by any court for any purpose.

Plaintiff's Motion for Partial Summary Judgment [Adv. Doc. 11–1], Exhibit 1, p. 3.

In April of 1992, Defendant/Debtor moved to terminate the alimony payments in question. Among the grounds for Defendant/Debtor's action, was the fact that Plaintiff was cohabitating with another male and that Plaintiff was employed full-time, and had no need for support. At that time, Defendant/Debtor was apparently current on his obligations under the Separation Agreement. The Plaintiff subsequently married the individual in question.

It is clear from record that the trial court had difficulty balancing the legal formalities against the apparent inequity of the Separation Agreement. Initially, the Domestic Relations Court for Montgomery County, Ohio found that it lacked jurisdiction to modify the terms of the Separation Agreement because the Agreement did not provide for continuing jurisdiction, and dismissed the Defendant/Debtor's action. On June 1, 1992, however, Defendant/Debtor filed a motion for relief from that judgment under Ohio Rule of Civil Procedure 60(B). The Defendant/Debtor's motion was granted on July 23, 1992. Plaintiff subsequently filed a motion for re-

consideration and notice of appeal. On August 12, 1992, the court sustained the Plaintiff's motion, and vacated the July 23, 1992 relief from judgment. Plaintiff's appeal was dismissed shortly thereafter. At the same time, the court rescheduled the Defendant/Debtor's relief from judgment motion for hearing.

The hearing on Defendant/Debtor's Rule 60(B) motion was conducted on February 9, 1993. In a written opinion entered April 23, 1993, the trial court stated that "[r]egardless of who may have been at fault, it is clear that the judgment in this matter is now unfair and grossly inequitable." *Edwards v. Edwards*, Case No. DM–89–1200, slip op. at 5 (Dom. Rel. Div., C.P. Ct. Montgomery County, Ohio, Apr. 23, 1993). The trial court provided a lengthy analysis of the facts appurtenant to the drafting and entering into of the Separation Agreement, concluding that Defendant/Debtor was unrepresented by counsel, was misinformed as to the permanency of the Agreement, had no input into the drafting of the Agreement, and that the trial judge in the divorce proceeding did not clearly explain to the Defendant/Debtor his responsibility under the permanent alimony clause. *Id.* at 5–8. Nevertheless, the trial court concluded that based upon Ohio law, the alimony provision of the Separation Agreement was permanent and non-modifiable as the court lacked jurisdiction to grant relief. *Id.* at 8.

Defendant/Debtor subsequently appealed, and after a hearing before the Second District Court of Appeals of Ohio, on March 23, 1994 the court issued its first opinion in this matter. *Edwards v. Edwards*, Case No. C.A. 14022, 1994 WL 95253 (Ohio Ct.App. Mar. 23, 1994). In addressing the trial court's analysis of the facts and the law in question, the court of appeals stated that:

> We think that a fair interpretation of the 'findings of fact and conclusions of law' is that the trial court found that it lacked jurisdiction to grant 60(B) relief under the facts of this case. We also think that it is fair to assume (at least for the purposes of the appeal) that the trial court would have granted the appellant relief from this 'unfair and grossly inequitable' judgment if it

had the authority to do so. It follows that we should reverse the judgment of the trial court and remand for further proceedings if the trial court had the authority to grant 60(B) relief under the facts before us.

*Edwards*, 1994 WL 95253, at *7. After an in-depth analysis of Ohio law as it pertains to jurisdiction in divorce proceedings, the court concluded that "the law is clear that Mr. Edwards' motion to terminate spousal support filed April 2, 1992 was properly overruled because the trial court lacked jurisdiction to grant the motion." *Id.*, at *8.

Despite this decision, the court of appeals went on to analyze the Agreement under Ohio Rule of Civil Procedure 60(B)(5), which permits a court to relieve a party from judgment for "any other reason justifying relief from the judgment." *Id.* The court concluded that there was no contractual "meeting of the minds" when the parties entered into the Separation Agreement, and therefore remanded the case to the trial court for a determination of "just and equitable" alimony, or in the alternative, a hearing on the contractual elements of the Agreement. *Id.*, at *9–10. Mrs. Edwards' subsequent discretionary appeal to the Ohio Supreme Court was not allowed. *In re Edwards*, Case No, 94–1065, 70 Ohio St.3d 1427, 638 N.E.2d 89 (Ohio Sup.Ct. Aug. 31, 1994) (table of appellate dispositions).

On remand, the trial court restated its belief that the Separation Agreement was unjust, and proceeded to analyze the Agreement for the contractual issues discussed by the court of appeals. *See Edwards v. Edwards*, Case No. DM–89–1200, slip op. at 9–13 (Dom. Rel. Div., C.P. Ct. Montgomery County, Ohio, Apr. 3, 1995). Among other findings, the court found that while Defendant/Debtor had communicated his terms pertaining to alimony to the Plaintiff's brother, these terms were "far different from the unfair and grossly inequitable terms" actually incorporated in the Agreement. *Id.* at 10. The court concluded that:

> It is the position of the Court that the husband has successfully rebutted the evidence of a valid contract by reason of his signature. His approval was uninformed

and at no time was he advised of the legal consequences of his approval. It is also clear that the husband's signature was obtained under highly questionable circumstances.

This Court finds and the Court of Appeals agrees that there is ample evidence in the record to support a finding that there was no meeting of the minds of the parties as to the issue of alimony.

*Id.* at 11. Having reached this conclusion, the court therefore terminated the continuing alimony as of the filing of the court's decision and order. *Id.* at 13.

The Plaintiff subsequently appealed the trial court's termination of alimony. A different panel of judges from the Second District Court of Appeals of Ohio heard the issues in question, and issued its opinion on May 3, 1996. *Henry v. Edwards,* Case No. C.A. 15205, 1996 WL 220885 (Ohio App. May 3, 1996). In that opinion, the court found that the trial court lacked jurisdiction to modify the Agreement, and thus was only permitted to set aside the Decree of Dissolution. *Id.,* at *3. The court further found that setting the Decree aside was inappropriate, as this would reinstate the parties' marriage, and the parties had remarried in reliance upon the dissolution. *Id.* In closing, the court stated that:

> Upon reflection, we conclude that our prior holding in Edwards I that a trial court is empowered without the consent of both parties to modify or sever the terms of a separation agreement without vacating the decree of dissolution, which is based upon the separation agreement, was in error. Thus, we now hold that a separation agreement which has been incorporated into a decree of dissolution of marriage may not be modified pursuant to Civ.R. 60(B) without vacating the entire decree of dissolution. Where one or both parties have remarried, such relief is impossible because the parties have remarried in reliance upon the original decree of dissolution. The only supportable result in this case, and the most reasonable precedent to establish for future cases, is recognition of the correctness of the trial court's original judgment that it was without jurisdiction

to modify the separation agreement, despite the harsh result in this particular case.

*Edwards,* 1996 WL 220885, at *4. Defendant/Debtor's subsequent appeal to the Ohio Supreme Court was not allowed on the grounds that it presented no "substantial constitutional question." *Henry v. Edwards,* Case No. 96–1377, 77 Ohio St.3d 1445, 671 N.E.2d 1284 (Ohio Sup.Ct. Nov. 20, 1996) (table of appellate dispositions).

On November 5, 1996, Defendant/Debtor Allen Charles Edwards petitioned for bankruptcy relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (1994). On January 9, 1997, Plaintiff Teri L. Henry instituted this adversary proceeding by filing her Complaint to Determine Dischargeability of Debt and for Declaratory Judgment [Adv. Doc. # 1–1]. This matter is before the court on the Plaintiff's Motion for Partial Summary Judgment [Adv. Doc. # 11–1] and Exhibits in Support; the Defendant's Motion for Abstention and Memorandum Contra [Adv. Doc. # 13–1] and Exhibits in Support [Adv. Doc. # 14–1]; and the Plaintiff's Reply Memorandum [Doc. # 16–1]. Having considered the evidence and arguments presented by the parties in their pleadings and having conducted an independent examination of the legal issues in question, the court is prepared to render its decision in this matter.

## CONCLUSIONS OF LAW

Before considering the specific elements of each of the parties' arguments, it is helpful to first examine the legal context within which they arise. Presently the Defendant/Debtor owes the Plaintiff a $500/week obligation arising out of a separation agreement. If the Defendant/Debtor is successful in these Chapter 11 proceedings, confirmation of his Chapter 11 plan will result in a discharge of prepetition obligations, *see* 11 U.S.C. § 1141(a)–(d), excluding those obligations excepted from discharge under 11 U.S.C. § 523. 11 U.S.C. § 1141(d)(2).

Section 523(a)(5) of the Bankruptcy Code provides that a discharge in bankruptcy does not discharge an individual debtor from any debt

to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes, a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. . . .

11 U.S.C. § 523(a)(5) (1994).

Thus under the Bankruptcy Code, it is clear that the confirmation of the Defendant/Debtor's Chapter 11 plan will not discharge an obligation arising out of a separation agreement and labeled as alimony unless that obligation has been assigned or is in fact something other than "alimony, maintenance, or support." *Id.* If the obligation meets the criteria set forth § 523(a)(5)(B), in order for the obligation to be dischargeable it must meet the criteria set forth in under § 523(a)(15).

The Plaintiff brought this adversary proceedings seeking a determination by the court that the $500/week obligation contained in Article 5 of the Separation Agreement is nondischargeable under the Bankruptcy Code. *See* Plaintiff's Motion for Partial Summary Judgment [Adv. Doc. 11–1], Exhibit 1, p. 3. As there has been no indication that the obligation has been assigned, the initial question before the court whether the obligation labeled as alimony is "in the nature of alimony, maintenance, or support." 11 U.S.C. § 523(a)(5)(B).

## THE NATURE OF THE OBLIGATION

The traditional standard for determining whether an obligation is actually "in the na-

ture of alimony, maintenance, or support," is set forth in the out in *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103 (6th Cir.1983). As explained by the Sixth Circuit in *Fitzgerald,* the *Calhoun* test consists of four parts:

First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law. The burden of demonstrating that an obligation is in the nature of support is on the non-debtor.

*Fitzgerald v. Fitzgerald (In re Fitzgerald),* 9 F.3d 517, 520 (6th Cir.1993) (citations omitted).

As the *Fitzgerald* court explained, however, the *Calhoun* test was originally announced in the context of determining whether an obligation *not* labeled as alimony is in fact alimony. *Id.* The *Fitzgerald* court expressed a reluctance to consider elements such as "present needs" in making the determination of whether an obligation labeled as alimony is in fact alimony, but rather directed courts to consider the nature and intent of the parties agreement, as well as traditional state-court principles of alimony. *Id.* at 520–21. This is consistent with this court's prior ruling in *Gibson,* which held that while the four-part test of *Calhoun* is inapplicable in cases with facts dissimilar to *Calhoun,* "the first prong of the *Calhoun* test is consistent with the majority approach" for all such cases. *Gibson v. Gibson (In re Gibson),* 157 B.R. 366, 373 (Bankr.S.D.Ohio 1993).

Thus the primary factor to be considered is the intent of the parties. *See Calhoun,* 715 F.2d at 1109; *Gibson,* 157 B.R. at 373. Defendant/Debtor contends that it was not his intent in making the Separation Agreement to create a lifetime alimony obligation, but rather to pay alimony only until such time as Plaintiff remarried.

In addition to the Defendant/Debtor's affidavit presented to the court, the evidence adduced in the state courts supports the conclusion that Defendant/Debtor made no informed decision to create the obligation in question. The Domestic Relations Court for Montgomery County, Ohio, when considering the Defendant/Debtor's relief from judgment motion, provided a lengthy analysis of the facts pertaining to the drafting and entering into of the Separation Agreement. *Edwards v. Edwards,* Case No. DM–89–1200, slip op. at 5–8 (Dom. Rel. Div., C.P. Ct. Montgomery County, Ohio, Apr. 23, 1993). That court concluded that Defendant/Debtor was unrepresented by counsel, was misinformed as to the permanency of the Agreement, had no input into the drafting of the Agreement, and that the trial judge in the divorce proceeding did not fully explain to the Defendant/Debtor his responsibility under the permanent alimony clause. *Id.*

In addition, the Second District Court of Appeals of Ohio examined the facts pertaining to these obligations on two separate occasions, and on both occasions concluded that the Defendant/Debtor was misinformed as to the alimony obligations under the Separation Agreement. First, on appeal from the trial court's denial of Defendant/Debtor's motion for relief from judgment, the appellate court found that although Defendant/Debtor had conveyed his written request for terminable alimony to the Plaintiffs brother, that request was not incorporated into the agreement. *See Edwards v. Edwards,* Case No. C.A. 14022, 1994 WL 95253, at *2, *5 (Ohio Ct.App. Mar. 23, 1994). The court concluded that "[t]here is no question but that movant did not understand the alimony clause in the Agreement." *Id.,* at *6. Later, when the court considered Plaintiff's appeal from the trial court's subsequent modification, a different panel of the court of appeals also concluded that "the record supports the determination that [Defendant/Debtor] misapprehended the spousal support provision...." *Henry v. Edwards,* Case No. C.A. 15205, 1996 WL 220885, at *3 (Ohio Ct.App. May 3, 1996).

While these decisions are not binding on this court, they are part of the factual record

before the court. Together with the affidavit of the Defendant/Debtor, these constitute sufficient proof to the court that Defendant/Debtor did not intend to create a lifetime alimony obligation. It is therefore the conclusion of this court while the $500/week obligation may have been in the nature of alimony prior to the remarriage of the Plaintiff, obligations owing after the Plaintiffs remarriage were not "in the nature of alimony, maintenance, or support." 11 U.S.C. § 523(a)(5)(B).

It is important to note the effect of this determination. A determination that an obligation is not "in the nature of alimony, maintenance, or support" is not the same as modifying the Separation Agreement to remove the obligation. Prior to the enactment of the 1994 Bankruptcy Reform Act, Pub.L. No. 103–394 (1994), a determination that an obligation was not in the nature of alimony, maintenance, or support under § 523(a)(5)(B) meant that the court, in its discretion, would "then set a reasonable limit on the nondischargeability of that obligation for purposes of bankruptcy." *Calhoun,* 715 F.2d at 1110. Since the enactment of the 1994 Bankruptcy Reform Act, however, courts are given specific guidance in quantifying the amount of such obligations that may be dischargeable. *See* 11 U.S.C. § 523(a)(15). Thus, in order for this obligation to be discharged, it now becomes necessary for the Defendant/Debtor to demonstrate that this obligation meets the dischargeability criteria set forth in 523(a)(15). In the limited context of the motions before the court, such a determination at this time would be premature.

Having ascertained the nature of the obligation, the court must address the arguments of the Plaintiff that under preclusion principles, this court may not, despite its conclusions as to the nature of this obligation, discharge this obligation. Thus, as with the state courts before it, this court must now turn to the question of whether it has the power to discharge this obligation.

## PRECLUSION PRINCIPLES

Plaintiff responds to the Defendant/Debtor's assertions by arguing that the previous proceedings in the state courts have not

found clear and convincing evidence of fraud, that the Defendant/Debtor has exhausted his state-court remedies, and as such, this court is estopped from considering these issues. In addition, the Plaintiff argues that the past treatment of these obligations as alimony for tax purposes prevents the Defendant/Debtor from now challenging their substance. While it is true that Defendant/Debtor has exhausted the state-court remedies which might set aside this agreement, Plaintiff's argument is founded on an incorrect understanding of *res judicata* and collateral estoppel.

Federal courts are directed by 28 U.S.C. § 1738 to give the same full faith and credit to state judicial proceedings as the proceedings would be given by the law in the courts of that state. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir.1997). This means that in order for an Ohio state-court judgment to have preclusive effect in federal court, it must first have preclusive effect in Ohio.

In Ohio, preclusion principles have been outlined by the Ohio Supreme Court in *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (Ohio Sup.Ct.1995). In Grava, the Ohio Supreme Court stated that a " 'final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction ... is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them .' " *Grava*, 73 Ohio St.3d at 381, 653 N.E.2d at 228 (citing *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (Ohio Sup.Ct.1943)) (omission in original). Thus, the first preclusion issue before the court is whether a decree of dissolution of marriage constitutes a "final judgment or decree *rendered upon the merits.*" *Id.* (emphasis added).

The Bankruptcy Appellate Panel of the Sixth Circuit has recently analyzed this very issue in *Corzin v. Fordu (In re Fordu)*, 209 B.R. 854, 862 (6th Cir. BAP 1997). In *Fordu*, the panel noted that under Ohio law, decrees of dissolution are fundamentally different from decrees of divorce. *Id.* at 863. In Ohio, a decree of dissolution is based upon an agreement between the parties, a process over which the divorce court has little super-

visory power. *Id.* When faced with the question of whether a potentially fraudulent separation agreement should be given preclusive effect, despite language in the agreement that it was "fair, just, and equitable," the panel in *Fordu* stated:

> The Debtor and [his wife] complied with the appropriate legal requirements in their dissolution proceedings. Accordingly, the Ohio court was required to enter the terms of their Separation Agreement and was without authority to review and determine whether it was fair, just and equitable and whether the transfers were made in exchange for reasonably equivalent value. If the transfers were in fact fraudulent as to the Debtor's creditors, the gratuitous addition of the words—fair, just and equitable—in the Dissolution Decree "could not erase the fraud."

*Id.* (citation omitted).

Thus the panel in *Fordu* made it clear that while a separation agreement adopted by a divorce court in a dissolution proceeding may present to the bankruptcy court other issues for resolution, it does not have the effect of *res judicata*, and that given the proper circumstances, the bankruptcy court can look beyond the language of the agreement. *Id.* This holding reaffirmed the holding of *Calhoun* that the congressional grant of authority found in 11 U.S.C. § 523(a)(5), empowering the bankruptcy courts to determine whether an obligation labeled as "alimony" is in fact alimony, mandates that federal courts apply a federal standard to such a determination. *Calhoun*, 715 F.2d at 1107, 1109. As the *Calhoun* court stated:

> We recognize that such inquiry may, in effect, modify a judgment or decree of a state court. In view of the congressional mandate to apply a federal standard, this cannot be avoided. Actual interference, however, will probably be minimal. In a contested case the likelihood that the state court would have awarded support where it was unnecessary is sufficiently remote that such interference by the bankruptcy court will seldom be necessary. When, as in the present controversy, the decree is not the result of a contested case but

merely incorporates the parties' agreement, the concern for comity is of less importance. To allow the parties' characterization of [the obligation] in such cases to control pro forma would permit the debtor to agree to forego his rights under the bankruptcy laws.

*Id.* at 1109 n. 10.

It is clear that the Sixth Circuit contemplated in *Calhoun* that in instances such as those before the court today, it is necessary for the bankruptcy court to "modify a judgment or decree of a state court" when "the state court awarded support where it is unnecessary." *Id.* Thus while the issue of necessity will not be heard by this court until such time as the parties plead their case under 11 U.S.C. § 523(a)(15), it is clear from the above that despite the state-court decree of dissolution, this court does have the power to discharge the obligation in question. Having so determined, it becomes unnecessary for this court to decide if there was "fraud or collusion" in obtaining the Decree. *Grava,* 73 Ohio St.3d at 381, 653 N.E.2d at 228.

■ In addition, this court must determine the significance of the appellate level decisions from the state court. The final ruling of the Second District Court of Appeals of Ohio was that it lacked jurisdiction to modify the Decree of Dissolution. *See Henry v. Edwards,* Case No. C.A. 15205, 1996 WL 220885, at *4 (Ohio Ct.App. May 3, 1996). As the court stated: "The only supportable result in this case, and the most reasonable precedent to establish for future cases, is recognition of the correctness of the trial court's original judgment that it was without jurisdiction to modify the separation agreement, despite the harsh result in this particular case." *Id.* Defendant/Debtor's appeal to the Ohio Supreme Court was not allowed on the grounds that it presented no "substantial constitutional question." *Henry v. Edwards,* Case No. 96–1377, 77 Ohio St.3d 1445, 671 N.E.2d 1284 (Ohio Sup.Ct. Nov. 20, 1996) (table of appellate dispositions).

The court agrees with the Plaintiff that the trial and appellate courts' finding of no jurisdiction and the subsequent denial of the appeal by the Ohio Supreme Court mean that the Defendant/Debtor has exhausted the state-court remedies which may alter this Decree. This conclusion, however, does not mean that this court is precluded from considering the question of dischargeability in bankruptcy.

■ It is recognized under Ohio law that, "[a] ruling by a tribunal ... that it lacks jurisdiction is not a ruling on the merits of the claim and has no *res judicata* effect." *Girard v. Trumbull County Budget Comm.,* 70 Ohio St.3d 187, 193, 638 N.E.2d 67, 72 (Ohio Sup.Ct.1994); *see also Gargallo v. Merrill Lynch, Pierce, Fenner & Smith,* 918 F.2d 658, 663 (6th Cir.1990). Thus while the factual determinations of these courts are persuasive, it is the conclusion of this court that these decisions have no preclusive effect in bankruptcy.

■ In addition, this court is mindful that while it may look to state substantive law for guidance, *see, e.g., Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), "[w]hat constitutes alimony, maintenance, or support, will be determined under the bankruptcy law, not State law." *Calhoun,* 715 F.2d at 1107. The state courts have made it clear that under substantive state-court law, Defendant/Debtor could and would be granted relief if not for the question of jurisdiction. Thus that the Debtor has no further recourse under Ohio law is more a matter of procedural formality than one of substantive law, and the United States Supreme Court has made it clear that federal courts, even when applying state-court law, are bound to apply federal procedure. *Hanna v. Plumer,* 380 U.S. 460, 469–74, 85 S.Ct. 1136, 1142–46, 14 L.Ed.2d 8 (1965).

■ As a final preclusion issue, Plaintiff asserts that the Defendant/Debtor's tax treatment of the obligations estops him from asserting that the obligations are anything other than alimony. As authority for this assertion, the Plaintiff cites to three federal court of appeals decisions. *See Robb v. Robb (In re Robb ),* 23 F.3d 895, 898–899 (4th Cir.1994); *Sampson v. Sampson (In re Sampson ),* 997 F.2d 717, 724 (10th Cir.1993); *Davidson v. Davidson (In re Davidson ),* 947 F.2d 1294, 1296–97 (5th Cir.1991).

The court recognizes that there is a split of authority regarding the tax treatment of settlement obligations and dischargeability in bankruptcy, *compare Robb,* 23 F.3d at 898–899; *Sampson,* 997 F.2d at 724 (10th Cir. 1993); *Davidson,* 947 F.2d at 1296–97 *with Kritt v. Kritt (In re Kritt* ), 190 B.R. 382, 388 (9th Cir. BAP 1995) (holding that "[t]he parties characterization of the transaction on their tax returns is merely evidence of their intent regarding the transaction"). Even so, the court finds it unnecessary to adopt either theory, as nothing within either approach prevents the position taken by the Defendant/Debtor in this case. The majority approach simply stands for the proposition that when a debtor wishes to dispute obligations that have never been viewed as anything other than alimony, including for tax purposes, the debtor may be estopped from making such a challenge. *Robb,* 23 F.3d at 898–899; *Sampson,* 997 F.2d at 724 (10th Cir.1993); *Davidson,* 947 F.2d at 1296–97. This is fundamentally different from the Defendant/Debtor's claim in this case, that it was always his understanding that those payments made prior to the marriage of the Plaintiff were alimony, while any obligation existing subsequent to the remarriage was not. Under either theory therefore, it is entirely consistent with this claim that the payments be treated as alimony on income tax returns until such time as a court modifies the Agreement to correct any misunderstanding.

It is therefore the conclusion that the tax treatment of the obligation is immaterial to the question before the court and does not affect the previous determination that these obligations were not "in the nature of alimony, maintenance, or support." 11 U.S.C. § 523(a)(5)(B).

## ABSTENTION

 As a final matter, the court must address the Defendant/Debtor's request that this court abstain from making any determination of dischargeability until such time as the pending state-court fraud action is resolved.

As similar request for abstention was considered by this court in *Baker v. Baker (In re Baker* ) 195 B.R. 883, 885 (Bankr.S.D.Ohio 1996); *see also Brothers v. Tremaine (In re Tremaine* ), 188 B.R. 380, 384 (Bankr. S.D.Ohio 1995). In *Baker,* this court noted that the Sixth Circuit has limited the abstention power of the federal courts to three distinct situations: when the state-court determination might moot the federal question; when there is a particular issue of state law to be resolved; or when federal jurisdiction has been invoked in bad faith to interfere with state-court proceedings. *Baker,* 195 B.R. at 885 (citing *Hanna v. Toner,* 630 F.2d 442, 445 (6th Cir.1980)).

It is apparent that none of these factors exist here. As the several prior state-court proceedings have made clear, nothing the state courts can do now can affect the obligation owed under the Separation Agreement. *See, e.g., Henry v. Edwards,* Case No. C.A. 15205, 1996 WL 220885 (Ohio App. May 3, 1996), *appeal denied,* 77 Ohio St.3d 1445, 671 N.E.2d 1284 (Ohio.Sup.Ct. Nov. 20, 1996) (table of appellate dispositions). As in *Baker,* there exists no compelling reason for the court to abstain under the present circumstances. *Baker,* 195 B.R. at 885.

Finally, Plaintiff asserts several arguments as to the validity of Defendant/Debtor's pending state-court action. As this court has determined that it will not abstain in favor of that action, there is no need to address the merits of those claims.

## CONCLUSION

It is the conclusion of this court that the $500/week obligation under the October 31, 1989 Separation Agreement, as it extended beyond the remarriage of the Plaintiff, is not "in the nature of alimony, maintenance, or support." 11 U.S.C. § 523(a)(5)(B). The court further finds that the state-court proceedings and the tax treatment of the obligation do not preclude this court from discharging the obligation in question. Finally, the court finds that abstention in this case is inappropriate.

For the forgoing reasons, the court finds that Plaintiff's Motion for Partial Summary Judgment [Adv. Doc. 11–1] and Defendant's Motion for Abstention [Adv. Doc. # 13–1]

should therefore be, and hereby are, DE-NIED.

It is so ORDERED.