**In re CREDITORS SERVICE CORPORATION, Debtor.**

**Arnold S. WHITE, Trustee, Trustee,**

**v.**

**CREDITORS SERVICE CORPORATION, et al., Defendants.**

**Bankruptcy No. 94–50019.
Adv. No. 95–0038.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

April 10, 1997.

John F. Cannizzaro, Cannizzaro, Fraser & Bridges, Marysville, OH, for the Consolidated Estate.

Grady L. Pettigrew, Jr., Arter & Hadden, Columbus, OH, for Kathleen Cooley.

Victoria E. Powers, Schottenstein, Zox & Dunn, Columbus, OH, for Consolidated Freightways of Delaware, Inc.

## MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

This Memorandum Opinion and Order constitutes the Court's ruling on the Motions of Trustee filed on June 7, 1996, by Arnold S. White ("Trustee"), and the Memorandum Contra of Arter & Hadden filed on July 26, 1996 by Grady L. Pettigrew, Jr. ("Mr. Pettigrew") and Arter & Hadden ("A & H"). In this Memorandum Opinion and Order, the Court addresses the Trustee's request for the imposition of sanctions and request for disgorgement of fees. Fed.R.Bankr.P. 9011 ("Rule 9011") and 11 U.S.C. § 329. The Court has considered the pleadings, the statements of counsel, all exhibits filed with the Court, and the record in this case. The Court has determined that the imposition of sanctions is warranted; however, the Court declines to order the disgorgement of fees. To promote an understanding of the Court's rationale and to ensure that the parties to this litigation appreciate the significance of their actions, some brief background is necessary.

On February 10, 1995, the Trustee commenced an adversary proceeding to seek substantive consolidation of an individual, Kathleen Cooley ("Ms. Cooley"), National Creditors Group ("NCG"), and other entities with Creditors Service Corporation ("Debtor"). On February 23, 1995, an answer was filed by Mr. Pettigrew and A & H. The Complaint was amended on October 23, 1995, to add counts requesting the turnover of Debtor's funds held by entities controlled by Ms. Cooley, including NCG, and an answer was filed by Mr. Pettigrew and A & H on October 27, 1995.[1] Consolidated Freightways of Delaware, Inc. ("Consolidated"), the Debtor's largest creditor holding a claim in excess of $900,000.00, supported the Trustee's position and actively participated throughout this proceeding. The central point of the adversary proceeding was that post-petition the collection business of the Debtor was taken over by and continued to be operated by Ms. Cooley through NCG.

Ms. Cooley and her counsel, Mr. Pettigrew and A & H, strenuously and continually denied this relationship between the Debtor and NCG in their answers, during the course of discovery and hearings, until the eve of trial or around January 29, 1996. On that day, an unsolicited call was placed by Mr. Robert Jones ("Mr. Jones") to Carla Struble ("Ms. Struble"), an attorney formerly of A & H. Mr. Jones is Ms. Cooley's son, and one of Debtor's former employees. According to Mr. Pettigrew, Mr. Jones told Ms. Struble that there were checks that belonged to the Debtor that were in the possession of NCG, and that post-petition there were some Debtor accounts that were being pursued by A & H. At Ms. Struble's request, Mr. Jones provided documentation for his allegation, and Ms. Struble then obtained additional documentation from Mr. Timothy Riedel ("Mr.

Riedel") and Mr. Craig Hartpence ("Mr. Hartpence"), an attorney and paralegal, respectively, employed by A & H. The additional documentation obtained from Messrs. Riedel and Hartpence confirmed Mr. Jones' statements. During the course of the substantive consolidation trial, Mr. Pettigrew and A & H did not present any defense to the central allegation of the litigation; i.e., that the Debtor and NCG were the same, and that through NCG the Debtor's business had been operated post-petition without the knowledge of the Trustee and Court authorization.

On May 13, 1996, the Court entered a Memorandum Opinion and Order that substantively consolidated Ms. Cooley and other entities, including NCG, with the Debtor. *In re Creditors Service Corp.*, 195 B.R. 680 (Bankr.S.D.Ohio 1996). Regarding the checks discovered by Mr. Jones and Ms. Struble, this Court found, as part of its consolidation decision, in relevant part:

> A review of the checks written to the Debtor post-petition indicates that they were negotiated by NCG. Also, a review of the checks written to NCG by Arter & Hadden post-petition indicates that they pertain to the accounts previously forwarded to Arter & Hadden for collection by the Debtor. *In re Creditors Service Corp.*, 195 B.R. at 684 (footnote omitted).

With reference to the relationship between the Debtor and NCG, this Court found, as part of its consolidation decision, in relevant part:

> ... [T]he evidence shows that Debtors' [sic] checks were cashed and deposited by NCG post-petition without notice to the Trustee and without benefit of a Court order. While NCG had been formed long

1. In the original complaint filed by the Trustee on February 10, 1995, it is stated in relevant part:

> 7. All of the Defendants were in existence before the filing of the case. However, Defendant National Creditors Group, Inc.... commenced operations after Debtor filed its petition, performing the same operations as Debtor and for Debtor's same customers.

This allegation was denied in the answer filed on February 23, 1995.

In the amended complaint filed on October 23, 1995, the allegations made in the original complaint were repeated, but in addition it was asserted:

> 22. Defendant National Creditors Group is in possession of at least Twenty three thousand nine hundred twenty six ($23,926.53) [sic] dollars and fifty three cents by reason of post-petition deposits of debtor funds into National Creditors Group accounts.

In the answer filed on October 27, 1995, this new allegation was denied.

prior to the bankruptcy filing, it only became active as a result of the bankruptcy filing. The record also shows that NCG continued to collect on the Debtor's accounts post-petition, and but for the Debtor's accounts NCG would have had no work to perform. The evidence, including checks and testimony of collection counsel and the Debtor's former operations manager, is insurmountable and clearly demonstrates that NCG simply started where the Debtor stopped.

Indeed, the Court is surprised by the utter arrogance and brazen manner in which the Debtor's business continued and indeed operates today under the guise of NCG, even though a chapter 7 petition and schedules were filed more than two years ago that fail to make any reference to this activity.... **In view of these actions, the Court can only conclude that Ms. Cooley, as principal of the Debtor and NCG, acted fraudulently to conceal from creditors and the Trustee assets of the estate**.... *In re Creditors Service Corp.,* 195 B.R. at 685 (emphasis supplied).

These events and the involvement of Mr. Pettigrew and A & H serve as the basis for the Trustee's request for the imposition of sanctions pursuant to Rule 9011 and the disgorgement of compensation pursuant to § 329 of the United States Bankruptcy Code. The Court opined in the substantive consolidation memorandum:

It is extremely difficult ... to understand why ... Arter & Hadden did not act upon and/or become aware of their own post-petition collection activities when [the firm] took on the responsibility of representing ... Ms. Cooley and various entities.... At a minimum, the apparent belated, serendipitous discovery by Arter & Hadden of

its post-petition collections, was an unnecessary distraction. *In re Creditors Service Corp.,* 195 B.R. at 684, n. 2.

Rule 9011 sanctions are imposed primarily to deter filings that are frivolous or for an improper purpose.[2] *In re KTMA Acquisition Corp.,* 153 B.R. 238, 247–48 (Bankr.D.Minn.1993); *In re Rainbow Magazine, Inc.,* 136 B.R. 545, 550 (9th Cir. BAP 1992). Although a bankruptcy court is given broad discretion to levy appropriate sanctions, it should avoid the wisdom of hindsight and objectively examine whether the attorney made a reasonable pre-filing inquiry that factually and legally supported the filing of the pleading. *In re Big Rapids Mall Associates,* 98 F.3d 926, 930 (6th Cir.1996); *In re KTMA,* 153 B.R. at 249–50; *In re Rainbow,* 136 B.R. at 551. Sanctions can be levied on the attorney as the signer of the pleading, the client as the catalyst behind the pleading, or both, based on the allocation of appropriate culpability. *Matter of Jones,* 117 B.R. 415, 421–22 (Bankr.N.D.Ind.1990); *In re Rainbow,* 136 B.R. at 554; *In re Chicago Midwest Donut, Inc.,* 82 B.R. 943, 950 (Bankr.N.D.Ill.1988).

In determining whether an attorney's pre-filing inquiry was reasonable, four factors may be considered: (1) the time available to the attorney for investigation of claims; (2) whether the attorney had to rely on a client for information as to the facts underlying the pleading; (3) whether the attorney relied on another attorney's investigation in filing the pleading; and (4) whether the pleading was based on a plausible view of the law. *Century Products, Inc. v. Sutter,* 837 F.2d 247, 250–51 (6th Cir.1988).

**2.** Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, ... shall be signed by at least one attorney of record in the attorney's individual name.... **The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact** and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and

that **it is not interposed for any improper purpose, such as to harass, or cause unnecessary delay, or needless increase in the cost of litigation or administration of the case**.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee. Fed. R.Bankr.P. 9011(a) (emphasis supplied).

One court has compared the exercise of Rule 9011 sanction powers to attempts to define obscenity—"I know it when I see it." *In re KTMA*, 153 B.R. at 248, n. 8. Another court has applied a, "if you start laughing when repeating the argument, then it's frivolous," test. *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 934 (7th Cir.1989). At a minimum, however, a reasonable inquiry requires at least some affirmative investigation on the part of the attorney. *See Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1229 (6th Cir.1989); *Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.*, 827 F.2d 984, 987–88 (4th Cir.1987). The investigation need not be to the point of certainty to be reasonable. *See Nemmers v. U.S.*, 795 F.2d 628, 632 (7th Cir.1986). The attorney, however, must explore readily available avenues of factual inquiry. *Chapman & Cole v. Itel Container Int'l.*, 865 F.2d 676, 684 n. 11 (5th Cir.1989), *cert. denied*, 493 U.S. 872, 110 S.Ct. 201, 107 L.Ed.2d 155 (1989). Sanctions must be assessed where no evidence supports the attorney's claim for relief. *See Albright v. Upjohn Co.*, 788 F.2d 1217, 1221–22 (6th Cir.1986).

The disgorgement of compensation and the imposition of sanctions are not pleasant tasks, and can be an expensive proposition for the parties. They should not be used as tools to punish parties and/or their counsel for presenting a zealous defense, as warranted by the facts and within the bounds of the law. No matter how unpleasant the task, however, this Court feels duty bound to proceed for three reasons. First, the issue of the relationship between the Debtor and NCG was the *sine qua non* of the substantive consolidation litigation. That litigation has proven to be expensive, in which the Trustee and Consolidated have incurred fees and costs in excess of $200,000.00, and Mr. Pettigrew and A & H have generated fees and costs in excess of $140,000.00. The timely concession of the relationship between the Debtor and NCG could have reduced the expense to all parties. Second, the actions of Ms. Cooley in concealing the relationship were found to be fraudulent. The actions or inaction of Mr. Pettigrew and A & H, however unintentional, fostered the continuation of this fraud upon the Trustee and this Court. Third, by the time this Court issued its substantive consolidation order, all business operations had ceased. The timely concession of the relationship between the Debtor and NCG could have provided the basis for efforts to salvage the business operations without the burden of all the litigation. No amount of postmortem sophistry can heal these self-inflicted wounds or remove the taint of dishonesty.

Mr. Pettigrew and A & H offer various explanations and assert a reasonable inquiry was conducted. Such efforts may be summarized in relevant part as follows:

(a) Mr. Pettigrew and A & H did not know for a year while they represented Ms. Cooley and NCG that post-petition they were simultaneously collecting on the Debtor's accounts and remitting proceeds to NCG, because of the state of their records and the size of their firm; and

(b) Mr. Pettigrew and A & H came into the case a year after the bankruptcy petition was filed and were faced immediately with the Trustee's discovery requests, i.e., the deposition of Ms. Cooley. Under these circumstances they made their best efforts to inquire of Ms. Cooley and various professionals retained by Ms. Cooley and the entities she controlled.

Regarding A & H's post-petition collections, it acquired a collection practice as part of its absorption of the firm of Cunningham, Gibbs & Cavalieri. Although A & H discontinued the collection practice some time ago, it continues to service existing accounts, including those forwarded originally by Ms. Cooley's former spouse, Richard Cooley, on behalf of the Debtor. According to Mr. Pettigrew, the existing collection practice is run by Mr. Riedel and Mr. Hartpence. Both of these individuals claim they had no knowledge of the substantive consolidation litigation until the eve of trial, and Mr. Pettigrew asserts he had no knowledge of their collection activities on behalf of NCG and/or the Debtor until the eve of trial. According to Mr. Pettigrew, at the time Ms. Cooley and her entities became clients, the post-petition collection practice of A & H was not discov-

ered because their record keeping system included only the names of the creditors and debtors on the accounts, not those of any collection agencies acting as forwarders, such as NCG and/or the Debtor. According to Mr. Pettigrew, only in rare circumstances of major litigation, i.e., mass torts, is this system supplemented by a firm-wide communication and query.

This excuse fails to fully address the significance of the role of the collection agency (forwarder), the nature of the relationship between the forwarder and the collecting attorney (receiver), and to acknowledge key events that occurred in the relationship between A & H as the receiver and the Debtor and NCG as forwarders. The significant points missed include:

(a) Entities such as the Debtor and NCG that are forwarders serve as the agents for creditors, and it is they who refer claims to receivers for collection and maintain contact with the receivers;

(b) In the instant case, A & H was initially contacted by Richard Cooley on behalf of the Debtor in 1988, and a forwarding contract specifying the terms of collection, including compensation to A & H, was created; however, five months after a bankruptcy petition was filed on behalf of the Debtor, a letter was sent to A & H on June 17, 1994, by NCG requesting an update on collections on accounts previously forwarded by the Debtor. According to Mr. Pettigrew, after receipt of the June 17, 1994, letter, a paralegal at A & H modified the firm records and started sending Debtor's funds to NCG; and

(c) A & H collected Debtor's accounts and remitted funds to NCG post-petition, including the account discussed in the June 17, 1994, letter.

At the time Mr. Pettigrew and A & H took on the representation of Ms. Cooley and various entities, including NCG, they were aware: (a) a collection practice was within the firm through which A & H served as a receiver, (b) their clients in the consolidation litigation, Ms. Cooley and NCG, and the Debtor, were or had been involved in the collection business as forwarders, and (c) the Trustee alleged that the Debtor's collection business had been absorbed by NCG post-petition. Under these circumstances, it would have been reasonable to inquire of the collection practice if there were any pending matters forwarded by NCG and/or the Debtor. As demonstrated by Mr. Jones' phone call, one conversation with Mr. Riedel and/or Mr. Hartpence would have yielded a wealth of information.

Such inquiries were not made, and as a result, Mr. Pettigrew and A & H placed themselves in the untenable position of representing Ms. Cooley and NCG and denying the Trustee's allegation that the business of the Debtor had been absorbed by NCG. At the same time, A & H was collecting the Debtor's accounts pursuant to a 1988 forwarding contract negotiated with the Debtor and remitting proceeds, not to the Trustee on behalf of the Debtor, but to NCG. The net result is Mr. Pettigrew and A & H were simultaneously representing the targets of the substantive consolidation litigation while performing legal services pursuant to a contractual obligation arranged by and involving the Debtor, on whose behalf the substantive consolidation litigation was commenced. Mr. Pettigrew and A & H also placed themselves in the untenable position, had they presented any defense on behalf of NCG at trial, of possibly being called as witnesses against NCG in the substantive consolidation litigation based upon their post-petition collection activities. DR 5–101, 5–102.

All lawyers should understand a significant part of a law practice is centered around the ability to gather, store and readily retrieve a vast amount of information. This fact is particularly true with reference to the identities of one's clients, which determines a firm's ability to take on new clients without creating conflicts. The essential point missed by Mr. Pettigrew and A & H is that when there are failures in their conflict systems, and there will inevitably be some, it is the responsibility of the attorney and the firm. The only matter for debate is what should be done, and hopefully such *ex post facto* judgments are tempered by a recognition of the inherent frailties of information management systems.

Regarding the nature of the inquiry made by Mr. Pettigrew and A & H, Mr. Pettigrew states he questioned Ms. Cooley regarding the relationship between the Debtor and NCG and was told they were different. Mr. Pettigrew states Ms. Cooley informed him the Debtor was involved in commercial collections while NCG was engaged in consumer collections. Mr. Pettigrew states in addition to this inquiry, he consulted with professionals retained by Ms. Cooley, including an accountant and an attorney who indicated the entities were distinct. Mr. Pettigrew also states that business and tax return records of the subjects of the consolidation proceeding were examined, and that he deposed the Trustee's accountant to ascertain the factual justification for the consolidation proceeding.

While no one can dispute the complexity of the litigation and the voluminous documents involved, several factors indicate to this Court that the inquiry of counsel was not reasonable. First, Mr. Pettigrew and A & H entered an appearance in the adversary proceeding in February 1995, approximately twelve months prior to trial. Twelve months should have been more than ample time to find the documents located on the eve of trial. After all, they were business records generated by the Debtor and NCG, and they were records apparently located in another section of A & H. It was not the responsibility of the Trustee or his professionals to find these documents and present them to Mr. Pettigrew and A & H. Second, as the affidavit filed by Mr. Pettigrew demonstrates, he has a significant background in bankruptcy along with other members of A & H. This Court knows Mr. Pettigrew and A & H to be well-versed in the Code and Bankruptcy Rules and to practice at a highly sophisticated level indicative of the premier firms in the area. Such skills should have been more than ample for them to have discovered the true nature of the relationship between the Debtor and NCG prior to the eve of trial.

Third, in the bankruptcy community it is not unheard of for bankruptcy cases to be filed while the businesses continue to be run under different names.[3] Surely Mr. Pettigrew and A & H, in view of the level of their expertise, would be aware of this phenomenon and would be amply equipped to ascertain the true nature of the relationship prior to the eve of trial. Indeed, during the course of Ms. Cooley's deposition, conducted two months prior to the commencement of the adversary proceeding, the Trustee apparently cautioned Mr. Pettigrew to be sure of the veracity of Ms. Cooley's denial of the relationship between NCG and the Debtor. Also, on October 27, 1995, four months prior to trial, Consolidated filed a pretrial statement that included a January 24, 1994 letter that informs a customer of NCG's assumption of the Debtor's accounts, and purports to bear the signature of Ms. Cooley. This was another opportunity for Mr. Pettigrew and A & H to question the veracity of their client.

Fourth, aside from their level of sophistication, it should have been obvious to anyone that post-petition some business operations were being conducted from the same facilities formerly utilized by the Debtor. Common sense dictates that some time during the twelve months prior to trial, Mr. Pettigrew and A & H should have discovered the information supplied by Mr. Jones on the eve of trial and the true nature of the relationship between the Debtor and NCG.

 This Court finds that Mr. Pettigrew and A & H failed to make a reasonable

---

**3.** *See In re United Stairs Corp.,* 176 B.R. 359, 363–65, 369 (Bankr.D.N.J.1995) (debtor transferred its title, inventory, accounts and leased equipment to two newly formed nondebtor corporations then ceased operations; transferring and transferee corporation controlled by same individual); *In re Partridge Jr. & Sons, Inc.,* 112 B.R. 593, 595–96 (Bankr.S.D.N.Y.1990) (trustee had standing to bring action on claim that real property was transferred to nondebtor corporation and renovated with commingled nondebtor funds and debtor's funds such that the property should be regarded the property of the debtor's estate; transferring and transferee corporation controlled by same individual); *In the Matter of Daniele Laundries, Inc.,* 34 B.R. 931, 935 (Bankr. S.D.N.Y.1983) (creditor filed action claiming debtor had fraudulently transferred its materials, supplies, merchandise, inventory and equipment to nondebtor performing same business activities); *Sampsell v. Imperial Paper and Color Corp.,* 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941) (debtor transferred stock of goods on credit post-petition to newly formed nondebtor corporation and leased space to nondebtor to allow nondebtor to continue debtor's business).

inquiry, and the Court concludes the imposition of sanctions is appropriate. Also, this Court feels duty bound, although not requested, to impose sanctions against Ms. Cooley as the catalyst behind the efforts of Mr. Pettigrew and A & H. She is the one that fraudulently absorbed the business of the Debtor into NCG, and according to Mr. Pettigrew's statements, even told him that they performed different functions. For this reason it would be unjust to impose sanctions only against Mr. Pettigrew and A & H. Mr. Pettigrew, A & H and Ms. Cooley jointly and severally shall be responsible for the legal services and expenses of the Trustee and Consolidated regarding the relationship between the Debtor and NCG as denied in the answers. Such fees and expenses could have been obviated by a timely admission and concession. The Court has concluded disgorgement of fees paid is not warranted in view of the complex nature of the litigation and the small amount of fees paid that are known by this Court.

Within thirty days from entry of this Memorandum Opinion and Order, the Trustee may and Consolidated may file an itemized statement of their legal services and expenses that directly relate to the relationship between the Debtor and NCG as denied in the answers. At the discretion of the Trustee and Consolidated, they may defer such filings until the conclusion of the case when all fees are finally approved. A separate judgment entry will not be signed until the amount of fees and expenses is determined in accordance with this opinion.

**IT IS SO ORDERED.**