**In re Daniel J. FORDU, Debtor.**

**Harold A. CORZIN, Chapter 7 Trustee, Plaintiff–Appellant and Cross–Appellee,**

**v.**

**Daniel J. FORDU, Defendant–Appellee,**

**Julie A. Fordu, Defendant–Appellee and Cross–Appellant.**

**BAP Nos. 97–8020, 97–8021.**

United States Bankruptcy Appellate Panel of the Sixth Circuit.

Argued May 7, 1997.

Decided July 7, 1997.

Michael J. Moran, Sr., Weick, Gibson & Lowry, Cuyahoga Falls, OH (Michael J. Moran, Sr., on brief), for Appellant.

Howard S. Rabb, Dworken & Bernstein, Painesville, OH (Howard S. Rabb, Painesville, OH, and Gerald D. Piszczek, Medina, OH, on brief), for Appellee.

Before: LUNDIN, RHODES, and WALDRON, Bankruptcy Appellate Panel Judges.

## OPINION

The Chapter 7 Trustee filed a complaint to avoid certain prepetition transfers made by the Debtor, Daniel J. Fordu, to Julie A. Fordu, his former spouse ("Ms. Fordu"), under a Separation Agreement in a dissolution proceeding. Specifically, the Trustee seeks to avoid the transfer of the Debtor's interest in the proceeds of a winning lottery ticket

and a marital residence, as being either fraudulent or preferential transfers under Ohio law. The bankruptcy court entered partial summary judgment against the Trustee, holding that the Debtor never held any interest in the lottery proceeds to which the Trustee could succeed for the benefit of creditors. At the commencement of trial, the court took under advisement Ms. Fordu's motion to dismiss the remaining causes of action asserted in the Trustee's complaint. The bankruptcy court subsequently issued a decision dismissing the Trustee's complaint in its entirety, holding that, because the Trustee stood in privity with the Debtor and the Judgment Entry—Dissolution of Marriage (the "Dissolution Decree") recited that the disposition of the marital property was fair and equitable to both sides, preclusion principles barred the Trustee from now litigating the issue of whether the Debtor received reasonably equivalent value in exchange for the assets transferred. In dismissing the complaint, the bankruptcy court did not specifically rule on the Trustee's Third and Fourth Causes of Action, which asserted additional preference and turnover actions. Following the bankruptcy court's dismissal of the complaint, Ms. Fordu alleged that the Trustee violated Bankruptcy Rule 9011 by continuing the litigation after the bankruptcy court's entry of partial summary judgment and requested costs and attorney fees. The bankruptcy court denied Ms. Fordu's motion.

The Trustee appeals the bankruptcy court's dismissal of his complaint (Case No. 97–8020), and Ms. Fordu cross-appeals the court's denial of her motion for attorney fees and costs (Case No. 97–8021). The Panel reverses the bankruptcy court's Order Granting Motion for Summary Judgment and the Judgment Entry dismissing the Trustee's complaint. The Panel affirms the bankruptcy court's denial of Ms. Fordu's motion for attorney fees and sanctions. The case is remanded to the bankruptcy court for further proceedings consistent with this opinion.

## I. ISSUES ON APPEAL

1. Did the bankruptcy court err by concluding, as a matter of law, that the lottery proceeds were the separate property of Ms. Fordu in which neither the Debtor nor any creditor could claim an interest at the time of the parties' dissolution?

2. Did the bankruptcy court err in concluding that the Dissolution Decree, which recited that the parties' transfers in their Separation Agreement were fair, just and equitable, barred the Trustee on the basis of preclusion principles from litigating the issue of reasonably equivalent value?

3. Did the bankruptcy court err by failing to rule on the Trustee's Third and Fourth Causes of Action?

4. Did the bankruptcy court err in denying Ms. Fordu's motion for attorney fees and costs?

## II. JURISDICTION AND STANDARDS OF REVIEW

■ The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(c)(1) and the order transferring, with the consent of all parties and the district court, this appeal to the Bankruptcy Appellate Panel. The Panel reviews on a *de novo* basis the bankruptcy court's legal conclusions, including determinations of state law, *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), the grant or denial of summary judgment, *Martin v. Telectronics Pacing Sys., Inc.,* 105 F.3d 1090 (6th Cir. 1997), *petition for cert. filed,* 65 U.S.L.W. 3755 (U.S. May 1, 1997) (No. 96–1749), the application of preclusion principles, *United States v. Sandoz Pharmaceuticals Corp.,* 894 F.2d 825 (6th Cir.1990), and the dismissal of causes of action, *Joelson v. United States,* 86 F.3d 1413 (6th Cir.1996). Under a *de novo* standard of review, the reviewing court decides an issue as if the court were the original trial court in the matter. *Razavi v. Commissioner,* 74 F.3d 125, 127 (6th Cir. 1996).

■ A denial of attorney fees under Rule 9011 is reviewed for an abuse of discretion. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs),* 103 F.3d 472, 480 (6th Cir.1996). A denial of costs under Bankruptcy Rule 7054(b) is also reviewed for an abuse of

discretion. *Stuebben v. Gioioso (In re Gioio-so)*, 979 F.2d 956, 962 (3rd Cir.1992). "An abuse of discretion occurs only when the district court 'relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.'" *Downs,* 103 F.3d at 480–481 (citation omitted); *see also Ridder v. City of Springfield,* 109 F.3d 288 (6th Cir.1997) (an abuse of discretion occurs when a trial court acts upon "an erroneous view of the law or a clearly erroneous assessment of the evidence"). To find an abuse of discretion, the reviewing court "must be firmly convinced that a mistake has been made." *Damron v. Commissioner of Social Security,* 104 F.3d 853, 855 (6th Cir.1997).

## III. FACTS

In 1968, the Debtor and Ms. Fordu were married. Ms. Fordu redeemed, in 1986, a winning Ohio lottery ticket, which would pay approximately $19,000 per year until the year 2011. In 1990, the Debtor and Ms. Fordu filed an action to dissolve their marriage pursuant to Ohio law. Their Separation Agreement, incorporated into the Dissolution Decree entered on May 6, 1991, provided in part that the Debtor would receive half of the lottery proceeds for the year 1990, but would waive any claim to share in the receipt of any future lottery proceeds. The remaining lottery proceeds totaled approximately $380,-000. The Separation Agreement further provided that the Debtor would retain exclusive interest in a business he was starting. The Debtor's business failed and the Debtor filed a Chapter 7 case on April 14, 1993. The amended schedules filed in his case list assets of approximately $83,000 and liabilities of approximately $290,000.

The Chapter 7 Trustee filed an adversary complaint against the Debtor and Ms. Fordu alleging that the transfers effected by the Separation Agreement, particularly the transfers of the lottery proceeds and the marital residence,[1] were fraudulent transfers

and/or preferences avoidable under Ohio law, pursuant to the Trustee's powers under 11 U.S.C. § 544.[2] On February 15, 1994, the bankruptcy court entered partial summary judgment against the Trustee. The court held the lottery ticket and its proceeds were at all times the separate property of Ms. Fordu and the Debtor had no property interest in the proceeds to which the Trustee could succeed.

At the trial on the Trustee's remaining causes of action, following opening statements, Ms. Fordu moved to dismiss the Trustee's remaining claims. The bankruptcy court took the request under advisement and, thereafter, dismissed the remainder of the Trustee's complaint, holding that preclusion principles barred the Trustee from litigating the issue of whether the Debtor received reasonably equivalent value in exchange for the transfers in the Separation Agreement because the Trustee stood in privity with the Debtor and the state court Dissolution Decree recited that the parties' Separation Agreement was fair, just and equitable. The bankruptcy court did not specifically rule with respect to the Trustee's Third and Fourth Causes of Action, which asserted additional state-law preference claims and a demand for turnover.

Following the dismissal of the Trustee's complaint, Ms. Fordu filed a motion for attorney fees and costs, alleging that the Trustee violated Bankruptcy Rule 9011 by continuing the litigation after the bankruptcy court had entered its summary judgment decision on the issue of the lottery proceeds. The bankruptcy court concluded that the Trustee's claims were based upon an appropriate inquiry into the facts and were warranted by existing law, notwithstanding that the court had not been persuaded by the Trustee's arguments, and denied Ms. Fordu's motion.

---

1. Although the Trustee's complaint includes the marital residence as an additional transfer to be avoided and recovered for the estate, neither party focused on the marital residence in the bankruptcy court or in this appeal. This decision applies to the marital residence; however, the balance of this opinion focuses on the lottery proceeds.

2. 11 U.S.C. § 544(b) provides:

 The Trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

## IV. DISCUSSION

In this adversary, the Trustee's complaint alleged that the Debtor, as part of the Separation Agreement incorporated into the Ohio Dissolution Decree terminating their marriage, transferred to Ms. Fordu any claim to future lottery proceeds of approximately $380,000 and the parties' marital residence for less than reasonably equivalent value.

Although the Trustee asserted four separate causes of action pursuant to various federal and state statutes, the essential elements of the Trustee's related requests for relief were allegations that the Dissolution transfers were made with actual intent to hinder, delay, or defraud creditors, or were made without the Debtor receiving reasonably equivalent value at a time when the Debtor knew or should have known that he was insolvent or was about to start a business for which he did not have sufficient assets, that Ms. Fordu knew or should have known this information, that payment of her claims was preferred over payment of any other creditor's claims, and, that as a result, she has valuable property which should be turned over to the Trustee for further administration in this bankruptcy.

These causes of action pled the necessary state and federal statutory language which, if the Trustee could present sufficient evidence, would entitle him to some, or all, of the relief requested. The bankruptcy court denied the Trustee the opportunity to present such evidence by concluding, as a matter of law, the lottery proceeds were the separate property of Ms. Fordu, in which neither the Trustee nor any creditor could claim an interest, privity between the debtor and the Trustee prevented the Trustee from litigating the causes of action, and the Dissolution Decree's recitation that the transfers were fair, just and equitable precluded the Trustee from asserting that the transfers were not for a reasonably equivalent value. Each of the bankruptcy court's conclusions is fatal to the Trustee's position and is separately examined.

### A. The Lottery Proceeds

Although the Trustee did not separately appeal the bankruptcy court's Order

Granting Summary Judgment, the court specifically limited its Order solely to the lottery proceeds issue. Neither party sought, nor did the bankruptcy court enter, the Order as a final judgment pursuant to the provisions of Federal Rule of Civil Procedure 54(b), made applicable in adversary proceedings by Bankruptcy Rule 7054(a). *See Good v. Ohio Edison Co.,* 104 F.3d 93, 95 (6th Cir.1997) ("In the absence of a Rule 54(b) certification, an order disposing of fewer than all of the asserted claims is not appealable as a final judgment...."). Additionally, the bankruptcy court reaffirmed the Order as part of the Judgment Entry dismissing the Trustee's complaint, which was timely appealed. Accordingly, the lottery proceeds issue is properly before this Panel.

In determining this issue, the bankruptcy court, after reciting the standards governing summary judgment, determined that the Trustee's causes of action could not be based on the Bankruptcy Code's fraudulent conveyance section (§ 548) or preference section (§ 547). Such actions must be brought within one year of the transfer and almost two years had elapsed between the transfers and the filing of the Trustee's complaint. Neither party contests these determinations.

The court then acknowledged that the Trustee was bringing the causes of action pursuant to § 544, which authorizes the Trustee to assert causes of action pursuant to applicable law, in this case Ohio law.[3] The court examined Ohio law and concluded it permitted married women to hold property separate from their spouses, the Ohio Lottery Commission recognized only Ms. Fordu as the authorized recipient of the lottery proceeds, and lottery proceeds may neither be attached by a third party nor assigned to one. The court determined that the lottery proceeds were Ms. Fordu's separate property. The court further concluded that because the Debtor had no interest in the lottery proceeds, nor could any creditor attach these proceeds, the Trustee was likewise unable to assert any interest in the proceeds.

---

**3.** The Trustee's primary cause of action was a fraudulent transfer action under OHIO REV.CODE ANN. §§ 1336.04(A)(2) and 1336.05(A), which is subject to a four-year statute of limitations under § 1336.09. OHIO REV.CODE ANN. §§ 1336.04, 1336.05, and 1336.09 (Anderson 1996).

OHIO REV.CODE ANN. § 3105.171 codified Ohio case law which distinguished between marital property and separate property. The section, which became effective January 1, 1991,[4] provides definitions of "marital property"[5] and "separate property."[6] The section, which was in effect on the date the Dissolution Decree was entered, would include the lottery proceeds at issue as marital property because such proceeds are an interest of a spouse in personal property that was acquired during the marriage and such proceeds do not fit into any of the descriptions of separate property. The section further

provides that the holding of title to property by one spouse individually does not determine whether the property is marital or separate property. OHIO REV.CODE ANN. § 3105.171(H) (Anderson 1996).

The analysis would be the same under Ohio law in effect on the date the dissolution proceeding was commenced. Prior to the effective date of § 3105.171, Ohio law provided that marital property was all property acquired by the parties during the marriage unless there was proof that an exception created separate property. *Moro v. Moro,* 68 Ohio App.3d 630, 636, 589 N.E.2d 416, 420

**4.** The parties' dissolution action was filed prior to the effective date of OHIO REV.CODE ANN. § 3105.171, which did not apply to cases pending on the effective date. *Lyon v. Lyon,* 86 Ohio App.3d 580, 621 N.E.2d 718 (Ohio Ct.App.1993); *Burke v. Burke,* No. 490, 1993 WL 63384 (Ohio Ct.App. Mar. 9, 1993).

**5.** § 3105.171(A)(3)(a) and (b) provide:

(3)(a) "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;

(iv) A participant account, as defined in section 145.71 of the Revised Code, of either of the spouses, to the extent of the following: the moneys that have been deferred by a continuing member or participating employee, as defined in that section, and that have been transmitted to the Ohio public employees deferred compensation board during the marriage and any income that is derived from the investment of those moneys during the marriage; the moneys that have been deferred by an officer or employee of a municipal corporation and that have been transmitted to the governing board, administrator, depository, or trustee of the deferred compensation program of the municipal corporation during the marriage and any income that is derived from the investment of those moneys during the marriage; or the moneys that have been deferred by an officer

or employee of a government unit, as defined in section 145.74 of the Revised Code, and that have been transmitted to the governing board, as defined in that section, during the marriage and any income that is derived from the investment of those moneys during the marriage.

(b) "Marital property" does not include any separate property.

OHIO REV.CODE ANN. § 3105.171(A)(3)(a) and (b)(Anderson 1996).

**6.** § 3105.171(A)(6)(a) provides:

"Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;

(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;

(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;

(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

OHIO REV. CODE ANN. § 3105.171(A)(6)(a) (Anderson 1996).

(Ohio Ct.App. 1990) (citing *Wolfe v. Wolfe,* 46 Ohio St.2d 399, 350 N.E.2d 413 (Ohio 1976)).

The proceeds from a lottery won during a marriage have been consistently held to be marital, not separate, property by Ohio courts. *See Burden v. Burden,* No. 2–86–20, 1987 WL 18222 (Ohio Ct.App. Oct. 7, 1987); *Frasier v. Frasier,* No. 1538, 1981 WL 6545 (Ohio Ct.App. Dec. 4, 1981). *See also Leis v. Leis,* No. 94–CA–54, 1995 WL 559974 (Ohio Ct.App. Sept. 20, 1995); *Howard v. Howard,* No. 1169, 1986 WL 14237 (Ohio Ct.App. Dec. 9, 1986).[7] If the parties are married at the time the lottery is won, Ohio case law has determined lottery proceeds to be separate property only in circumstances not present in this case. *See, e.g., Barnes v. Barnes,* No. E–87–12, 1987 WL 19578 (Ohio Ct.App. Nov. 6, 1987) (lottery proceeds were separate property where the parties had separated prior to winning the lottery).

Further, to the extent that the understanding of the parties on the issues of separate property and marital property is reflected in the Separation Agreement, the Agreement itself acknowledges that Ms. Fordu's inheritance is treated as separate property;[8] however, the Debtor's interest in the lottery proceeds is treated as marital property. The Agreement provides: "In consideration for [the Debtor] waiving any and all right he may have to the lottery proceeds, [Ms. Fordu] agrees to pay to [the Debtor] as a property division one-half (½) of all the proceeds received for the year 1990 upon the execution of this agreement." Separation Agreement at 5, ¶ H.

At the time the bankruptcy court entered summary judgment, the facts established that the lottery proceeds were acquired during the parties' marriage and prior to any separation or the commencement of the dissolution action. There was no evidence presented to establish that the proceeds were separate property. Accordingly, the Debtor had an interest in the receipt of present and future lottery proceeds at the time of the parties' marital dissolution.

A recognition that Ohio law allows parties to waive claims they have to marital assets and protects lottery proceeds from a creditor's attachment or execution proceedings does not determine a creditor's standing to challenge as fraudulent a transfer between spouses in connection with the termination of a marriage. The issue is not whether a creditor attempting to execute on the lottery proceeds could prevail under Ohio law, but rather could the Trustee avoid the transfer of the Debtor's interest in the lottery proceeds at the time of the dissolution. To the extent that the Trustee could demonstrate a basis to avoid the transfer, case law supports including lottery proceeds in the Debtor's estate as non-exempt property. *See In re Meyers,* 139 B.R. 858 (Bankr.N.D.Ohio 1992) (lottery proceeds do not constitute an exemption under the Ohio exemption statutes).

■ Additionally, a spouse's creditors have an interest in property that is fraudulently or preferentially transferred in violation of applicable law, including transfers that occur in connection with marriage terminations. OHIO REV.CODE ANN. §§ 1313.56, 1313.57, and 1313.58 (Anderson 1996). *See also Journeymen, Barbers, Hairdressers & Proprietors Int'l Union of Am., Local No. 129 v. Ector,* 203 N.E.2d 370, 373 (Ohio 1964); *Ernsberger v. Ernsberger,* No. 2351, 1988 WL 107012 (Ohio Ct.App. Oct. 12, 1988). *See also F.D.I.C. v. Bell,* 106 F.3d 258, 263 n. 7 (8th Cir.1997) (interpreting Arkansas fraudulent transfer act concerning reasonably equivalent value in connection with a separation agreement and noting that although "[a] disparity in assets may appear 'fairly even' in a property settlement between consenting parties pursuant to a marital dissolution, it is rather less even in an action by a creditor to recover fraudulently-transferred assets from an insolvent debtor.").

### B. Preclusion Principles

In addition to the determination concerning the Debtor's waiver of any future claims

---

**7.** This opinion cites unpublished Ohio opinions in accordance with Rule 2 of the Supreme Court Rules for the Reporting of Opinions. The Panel also notes that unpublished opinions were relied upon by the bankruptcy court and cited to this Panel.

**8.** *See* OHIO REV. CODE ANN. § 3105.171(A)(6)(a)(*l*) (Anderson 1996).

to the lottery proceeds, the bankruptcy court separately held that since the parties' Separation Agreement was entered as part of the Ohio Dissolution Decree, preclusion principles [9] barred the Trustee's causes of action. The court determined that the there was an identity of parties between the Trustee and the Debtor; and thus, privity required a dismissal of the Trustee's claims. The court additionally determined that the issue of reasonably equivalent value was determined in the prior state court proceeding because the Dissolution Decree recited that the parties' Separation Agreement was fair, just and equitable.

■ The Full Faith and Credit Statute, 28 U.S.C. § 1738, and applicable Sixth Circuit law require a bankruptcy court to examine the preclusion law of the state that rendered the judgment and accord the judgment the same preclusive effect as would the state, unless Congress has expressly or impliedly created an exception. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir.1997). The syllabus [10] of *Grava v. Parkman Township,* 73 Ohio St.3d 379, 653 N.E.2d 226 (Ohio 1995) defines claim preclusion as follows:

> A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. (Paragraph two of the syllabus of *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, overruled; paragraph two of the syllabus of *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, overruled to the extent inconsistent herewith; paragraph one of the syllabus of *Norwood, supra,* and paragraph one of the syllabus of *Whitehead, supra,* modified; 1 Restatement of the Law 2d, Judgments (1982), Sections 24–25, approved and adopted.)

As opposed to claim preclusion, the principle of issue preclusion is that "the determination of a factual or legal issue in a judgment is conclusive in subsequent litigation if it was 'actually litigated and determined,' and the determination was essential to the judgment." *Shelar v. Shelar,* 910 F.Supp. 1307, 1312 (N.D.Ohio 1995).

■ Ohio law can accord preclusive effect to a dissolution decree, *Gilbraith v. Hixson (In re Gilbraith),* 32 Ohio St.3d 127, 512 N.E.2d 956 (Ohio 1987); however, the recognition of appropriate preclusion principles is merely the predicate to their application in a particular proceeding.

■ A constitutive element of applying preclusive effect to a prior judgment is an identity of the parties involved in the prior proceeding. The Trustee was not an actual party to the dissolution proceeding; however, a party will be bound by the prior judgment if that party stands in privity with one who was a party to the prior proceeding. *Scholler v. Scholler,* 10 Ohio St.3d 98, 105, 462 N.E.2d 158, 164 (Ohio 1984). The bankrupt-

---

9. This opinion uses the terms "claim preclusion" and "issue preclusion" as set out by the United States Supreme Court:

> The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of 'res judicata.' Res judicata is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.' Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion

therefore encompasses the law of merger and bar.

> This Court on more than one occasion has used the term 'res judicata' in a narrow sense, so as to exclude issue preclusion or collateral estoppel. When using that formulation, 'res judicata' becomes virtually synonymous with 'claim preclusion.' In order to avoid confusion resulting from the two uses of 'res judicata,' this opinion utilizes the term 'claim preclusion' to refer to the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit.

*Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) (internal citations omitted).

10. The syllabus of an Ohio Supreme Court opinion states the controlling points of law in the case. S.Ct. R. Rep. Op. 1(B).

cy court concluded that such privity existed between the Debtor and the Trustee.

This conclusion failed to recognize the panoply of powers the Bankruptcy Code grants to a trustee. A trustee not only stands in the shoes of a debtor, but is accorded this footwear unsoiled by the debtor's previous steps. In addition, a trustee can further choose the footwear of any creditor holding an allowable unsecured claim under applicable law. It has long been recognized that for privity to exist, the interest between a debtor and a trustee must be so similar that "[t]he [debtor] was [the trustee's] 'virtual representative' in the prior action." *Shuman v. McDonald (In re Shuman)*, 78 B.R. 254, 256 (9th Cir. BAP 1987). Unless the interest is virtually identical, "[t]he defense of a cause of action by a debtor pre-bankruptcy does not necessarily represent the rights of a bankruptcy trustee." *Id.* Additionally, courts have consistently recognized that the Trustee may pursue fraudulent or preferential transfers despite the fact that the debtor was a knowing and willing participant to such conveyances. *See Vaughan v. McDowell (In re McDowell)*, 173 B.R. 131 (Bankr.N.D.Ohio 1994); *Staats v. Palermini (In re Palermini)*, 113 B.R. 380 (Bankr. S.D.Ohio 1990). The distinction recognized repeatedly by the courts is that although privity may bar a trustee's actions if the prior judgment involved a personal cause of action of the debtor, privity does not bar causes of action brought by the trustee as a representative of creditors. *See Durkin v. Shea*, 957 F.Supp. 1360 (S.D.N.Y.1997); *Eisenberg v. Feiner (In re Ahead By A Length, Inc.)*, 100 B.R. 157 (Bankr.S.D.N.Y.1989); *Germain v. Colorado State Univ. (In re Windrush Assocs. II)*, 105 B.R. 195 (Bankr. D.Conn.1989).

The distinction between a debtor's personal causes of action in a marriage termination proceeding under Ohio law and a trustee's status as a representative of creditors has been recognized by the Sixth Circuit:

> [W]e also suggest that the courts below urge the trustee to appear in the divorce action. By setting out his position as representative of the debtor's creditors, the trustee could make the state court aware

that other parties' interests will be affected by the property division, thus possibly facilitating a fairer settlement for all parties concerned.

*White v. White (In re White)*, 851 F.2d 170, 174 (6th Cir.1988). The bankruptcy court erred in concluding that the Trustee's causes of action are barred by privity between the Trustee and the Debtor in connection with the Dissolution Decree.

An additional element in the application of preclusion concepts is raised in this proceeding in connection with the issue of "reasonably equivalent value." Under Ohio law, parties may choose whether their marriage will be terminated through a divorce or a dissolution proceeding. Although the parties retain the right to enter into a separation agreement as part of either a divorce or a dissolution proceeding, the role of the court is extremely limited in a dissolution proceeding. "The jurisdiction exercised by a trial court when granting a divorce is decidedly different than the jurisdiction exercised when granting a dissolution of marriage." *McClain v. McClain*, 15 Ohio St.3d 289, 290, 473 N.E.2d 811, 813 (Ohio 1984). Although a separation agreement is a contract between the spouses which the court may approve or disapprove,[11] an Ohio court cannot unilaterally change the provisions of the agreement in a dissolution proceeding. *In re Adams*, 45 Ohio St.3d 219, 219, 543 N.E.2d 797, 798 (Ohio 1989); *see also Knapp v. Knapp*, 24 Ohio St.3d 141, 493 N.E.2d 1353 (Ohio 1986); *Trent v. United States*, 893 F.2d 846 (6th Cir.1990).

The Debtor and Ms. Fordu complied with the appropriate legal requirements in their dissolution proceedings. Accordingly, the Ohio court was required to enter the terms of their Separation Agreement and was without authority to review and determine whether it was fair, just and equitable and whether the transfers were made in exchange for reasonably equivalent value. If the transfers were in fact fraudulent as to the Debtor's creditors, the gratuitous addition of the words—fair, just and equitable—in the Dissolution Decree "could not erase the fraud." *Ernsberger*, 1988 WL 107012 at *2.

---

**11.** *See* OHIO REV.CODE ANN. § 3105.65 (Anderson 1996).

864

It is also noteworthy that the Sixth Circuit examined Ohio dissolution proceedings in the context of a dischargeability proceeding, and reached a similar conclusion regarding the effect of a proceeding which merely incorporates the agreement of the parties without significant judicial oversight:

> We recognize that such inquiry may, in effect, modify a judgment or decree of a state court. In view of the congressional mandate to apply a federal standard, this cannot be avoided. Actual interference, however, will probably be minimal. In a contested case the likelihood that the state court would have awarded support [*such a transfer*] where it was unnecessary is sufficiently remote that such interference by the bankruptcy court will seldom be necessary. When, as in the present controversy, the decree is not the result of a contested case but merely incorporates the parties' agreement, the concern for comity is of less importance. To allow the parties' characterization of a loan assumption [*transfer*] in such cases to control *pro forma* would permit the debtor to agree [*force the trustee*] to forego his rights under the bankruptcy laws.

*Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1109 n. 10 (6th Cir.1983).

The bankruptcy court erred in concluding that the Separation Agreement incorporated into the Dissolution Decree barred the Trustee from litigating the issue of reasonably equivalent value.

### C. The Trustee's Third and Fourth Causes of Action

The bankruptcy court made no specific findings of fact or conclusions of law regarding the Trustee's Third and Fourth Causes of Action. Bankruptcy Rule 7052, Findings by the Court, makes Rule 52 of the Federal Rules of Civil Procedure applicable to adversary proceedings. Rule 52 provides in pertinent part:

> **(a) Effect.** In all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58.... Findings of fact and conclusions of law are unnecessary on decisions of motions ... except as provided in subdivision (c) of this rule.

> . . . .

> **(c) Judgment on Partial Findings.** If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law.... Such a judgment shall be supported by findings of fact and conclusions of law as provided by subdivision (a) of this rule.

FED. R. CIV. P. 52.

 Because the bankruptcy court's ruling was made at the conclusion of opening statements after the commencement of trial, Rule 52(c), as incorporated by Bankruptcy Rule 7052, requires that the bankruptcy court make findings of fact and conclusions of law. In a discussion of Rule 52, the Sixth Circuit noted:

> It is not necessary for the District Court Judge to prepare elaborate findings on every possible issue raised at trial. However, there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated. The findings should be explicit so as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision.

*Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 418 (6th Cir.1992) (citations omitted). Where it is unclear how the bankruptcy court reached its conclusion such that the appellate court cannot provide an adequate review of the decision, the bankruptcy court's decision must be vacated and the case remanded for further findings. *See In re 599 Consumer Electronics, Inc.*, 195 B.R. 244 (S.D.N.Y.1996). Where a court has failed to make specific findings, but where facts which support the court's judgment can be inferred from the court's other findings, "an appellate court will deem that such inferences were drawn." *Beal Bank, S.S.B. v. Jack's Marine, Inc.*, 201 B.R. 376, 381 (E.D.Pa.1996).

 It appears that the bankruptcy court's determinations concerning the lottery proceeds and preclusion principles previously discussed in this opinion persuaded the court

that the Trustee could not prevail on his Third and Fourth Causes of Action. Because the record on appeal does not afford the Panel a clear understanding of the basis of the bankruptcy court's decision, the judgment entry dismissing the Trustee's Third and Fourth Causes of Action is reversed and the case remanded to the bankruptcy court for further findings.

It should be noted that, except as set forth in this opinion, the Panel expresses no determinations with regard to the ultimate merits of any party's positions. These are issues which await the presentation of evidence and argument in future proceedings before the bankruptcy court.

### D. Attorney Fees and Costs

■ Ms. Fordu appeals the bankruptcy court's denial of her Motion for Allowance of Bill of Costs and Attorney's Fees, in which she requested costs of $1,492.35 and attorney fees of $17,925.00. The bankruptcy court denied costs to Ms. Fordu under Bankruptcy Rule 7054(b), simply noting that there was no evidence before the court that the Trustee had acted other than in good faith. The bankruptcy court also denied Ms. Fordu's request for attorney fees under Bankruptcy Rule 9011, finding that the Trustee formed a belief, after making a reasonable inquiry, that his claims were warranted under existing law.

Bankruptcy Rule 9011(a) provides in pertinent part:

(a) **SIGNATURE**.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary

delay or needless increase in the cost of litigation or administration of the case. . . . If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

FED. R. BANKR.P. 9011(a).

Sanctions under Bankruptcy Rule 9011 are appropriate where an attorney has advanced an argument "not well grounded in fact or warranted by existing law or a good faith argument for the extension or modification, or reversal of existing law." *Downs*, 103 F.3d at 481; *see also White v. Creditors Serv. Corp. (In re Creditors Serv. Corp.)*, 207 B.R. 567 (Bankr.S.D.Ohio 1997) ("Sanctions must be assessed where no evidence supports the attorney's claim for relief.") The inquiry to be made is whether the attorney's actions were reasonable at the time the attorney engaged in the questioned conduct. *Silverman v. Mutual Trust Life Ins. Co. (In re Big Rapids Mall Assocs.)*, 98 F.3d 926, 930 (6th Cir.1996).

Federal Rule of Civil Procedure 11, after which Bankruptcy Rule 9011 is modeled,[12] was substantially revised in 1993 amid many concerns surrounding the former Rule 11, including that the rule needlessly spawned collateral litigation, and that it encouraged abuse of its potential to shift fees among the parties. *Ridder*, 109 F.3d at 293. The amendments represent an attempt to address these concerns in light of Rule 11's overall purpose of deterring the proscribed conduct rather than compensating the opposing party. *Id.* at 294. Thus, Rule 11 now "deemphasizes monetary sanctions and discourages direct payouts to the opposing party."

---

12. As a result of the 1993 revisions, there are presently significant differences between Bankruptcy Rule 9011 and Rule 11. The most notable differences are that Rule 11 sanctions are no longer mandatory, Rule 11(b)(3) now permits a party to make allegations which do not have present factual support but which are likely to have factual support after a reasonable opportunity for further investigation and discovery, and, under Rule 11(c)(1)(A), a party has a 21–day safe harbor to withdraw or correct an offending filing. However, the proposed amendments to Bankruptcy Rule 9011, which will take effect on December 1, 1997 absent contrary Congressional action, will again cause Bankruptcy Rule 9011 to substantially mirror Rule 11. *See infra* note 13.

866

*Id.* (citing Fᴇᴅ. R. Cɪᴠ. P. 11 Advisory Committee Notes (1993 Amendments)). Because Rule 11 continues to serve as the model for Bankruptcy Rule 9011,[13] the Rule 11 con-

13. Effective December 1, 1997, absent contrary Congressional action, Bankruptcy Rule 9011 will be amended to read as follows:

**Rule 9011. Signing of Papers; Representations to the Court; Sanctions; Verification and Copies of Papers.**

(a) **Signature.** Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(b) **Representations to the court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) **How Initiated.**

(A) **By Motion.** A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

(B) **On Court's Initiative.** On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

(2) **Nature of Sanction; Limitations.** A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3) **Order.** When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

(d) **Inapplicability to discovery.** Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 7026 through 7037.

(e) **Verification.** Except as otherwise specifically provided by these rules, papers filed in a case under the Code need not be verified. Whenever verification is required by these rules, an unsworn declaration as provided in 28 U.S.C. § 1746 satisfies the requirement of verification.

(f) **Copies of signed or verified papers.** When these rules require copies of a signed or verified paper, it shall suffice if the original is signed or verified and the copies are conformed to the original.

cerns addressed by the 1993 amendments are factors that should be considered in issues involving Bankruptcy Rule 9011.

In the circumstances of this case, the bankruptcy court correctly applied the principles set out above, specifically noting that "[w]hile the Trustee's arguments may not have been accepted by this court, that fact alone does not support an award of costs and fees." There was no abuse of discretion by the bankruptcy court.

## V. CONCLUSION

The bankruptcy court's Order Granting Motion for Summary Judgment and the Judgment Entry dismissing the Trustee's complaint are **REVERSED.** The bankruptcy court's Order denying Ms. Fordu's Motion for Allowance of Bill of Costs and Attorney's Fees is **AFFIRMED.** The case is **RE-MANDED** to the bankruptcy court for further proceedings consistent with this opinion.